## BRIDGE v. OAKEY.

An inspector of elections is not answerable in damages for a mere error of judgment in rejecting a voter, when his motives are upright. To maintain an action against him for refusing to receive a vote, it must be alleged and proved that he acted fraudulently or maliciously. To constitute malice the act must be a wrongful one, done intentionally, without just cause or excuse. Personal ill will to the party aggrieved is not essential to its existence; and, in the absence of any declared intention to do wrong, the motive may be inferred from the circumstances attending the act.

Where there are but two inspectors of an election, the assent of both is required for the reception of a vote.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J. *Rawle,* for the plaintiff. *A. O. Hall, Elmore* and *W. W. King,* for the appellant. The judgment of the court was pronounced by

KING, J.* The plaintiff alleges that he is a qualified voter, and that the defendant, acting as one of the inspectors appointed to hold an election, in July, 1844, refused to receive his ballot, and thereby prevented him from voting. He avers that this refusal of the defendant was malicious, fraudulent, and illegal, and claims damages for the wrong of which he complains. The defendant excepted that the petition set forth no cause of action. The exception was maintained and the suit dismissed. Upon an appeal to the late Supreme Court, that judgment was reversed, and the cause was remanded. 12 Rob. 688. The cause was then submitted to a jury, who gave a verdict for the plaintiff for $5; and the defendant, after an ineffectual effort to obtain a new trial, has appealed.

---

* SLIDELL, J., did not sit on this case, having been of counsel.

It is contended that the plaintiff has failed to prove that, the motive of the defendant for refusing to receive the plaintiff's vote, was fraudulent or malicious. The principle urged by the defendant that an inspector of an election is not answerable in damages for a mere error of judgment, when his motives are upright and pure, and that to maintain an action against him for refusing to receive a vote, it must be alleged and proved, that he acted fraudulently or maliciously, is not contested by the plaintiff's counsel, and indeed is too well settled to be questioned. The technical term malice used in describing the character of the wrong, is defined to be "a wrongful act done intentionally, without just cause or excuse." 2 Phil. Ev. 245. Personal ill will to the party aggrieved is not essential to its existence. In the absence of direct proof of a declared intention to do a wrong, the motive may be inferred from the circumstances which attend the act. There being, in the present instance, no evidence of such declared intention, we will briefly state the principal facts disclosed by the evidence, from which the jury, who are the most competent judges of such issues, inferred an improper motive, and which do not in our opinion authorise us to reverse this verdict.

The defendant and *H. Gillingham* were appointed inspectors of election for the third ward of the second municipality. On the evening immediately preceeding the election the defendant attended a meeting composed exclusively of inspectors of the political party to which he belonged, called for the purpose of procuring a concert of action among them in relation to the *Elliott* votes. The deliberations of the meeting were protracted, but resulted in no definitive action. On the morning of the election the defendant at first refused to open the polls, on the ground that the sheriff of the parish court could not be found, and that his presence was necessary to preserve order. After some discussion the inspectors appointed an officer to keep order, the polls were opened, and sixteen votes were received. *Gillingham* refused to receive the vote of the seventeenth person who presented himself, on the ground that the right of suffrage was claimed upon an *Elliott* certificate of naturalisation, which did not, as he believed, contain the required oath. The defendant insisted that the vote was legal and should be received. Other voters, possessing the requisite qualifications, and among the number was the plaintiff, subsequently presented themselves. No objections were made to their qualifications, but the defendant refused to receive their votes, stating that the vote of the seventeenth voter was under consideration. After this difference of opinion arose between the inspectors, this answer was uniformly returned by the defendant throughout the day to all who applied to cast their votes, in consequence of which no other votes were received at that box. *Gillingham*, the co-inspector, desired to receive the votes of such qualified persons as presented themselves, but was met by the steady refusal of the defendant. who persisted in asserting that the seventeenth ballot was still under consideration. *Gillingham* declared to the defendant at the time that his opinion was formed in relation to the certificate of naturalisation of the seventeenth voter. The defendant replied that his mind was also made up. The defendant further declared that he would receive no other votes until the seventeenth vote was received. The polls are required by law to be closed at four o'clock, P. M. This refusal to receive votes after the sixteenth was cast, was persisted in by the defendant until about one minute before four o'clock, when he announced that he was ready to reject

BRIDGE    the *Elliott* vote and receive the others.  Before the voters could reach the
  *v.*     polls it was announced that they were closed.
OAKEY.
        Other facts are disclosed by the testimony, which no doubt operated upon
the minds of the jury, but which we do not deem it important here to detail.
Upon this testimony we will only remark that, the repeated assertion made by
the defendant that the seventeenth vote was under consideration, is wholly in-
consistent with the fact that the opinions of both of the inspectors in relation to
the propriety of receiving it had been previously formed and expressed.  There
being but two inspectors, the assent of both to its reception was indispensable.
The refusal of one to receive it was sufficient to cause its rejection.   From the
moment that *Gillingham* declared his opinion that the vote was illegal and should
not be received, it was rejected, and beyond the control of the other inspector,
who could no longer treat it as under advisement.   That the defendant was
aware that such was the effect of the refusal of one of the inspectors is mani-
fest from his own declaration that, no other vote should be deposited until the
seventeenth was received.   The rejection by *Gillingham* of the seventeenth
vote offered, even if improperly done, which is not urged, furnishes no excuse
or justification for the defendant's refusal to receive the votes of qualified
voters, who subsequently presented themselves.   We think that the verdict of
the jury ought not to be disturbed.

                                                         *Judgment affirmed.*