## John Maguire *v.* M. W. Hughes.

The Mayor of the town of Jackson being by law *ex officio* Justice of the Peace, has the power to issue warrants for the arrest of criminals.

The error of a magistrate in issuing a warrant without an affidavit will not render him liable for damages if he acted in doing so in good faith and for what he deemed to be the public good.

A warrant issued by a Justice of the Peace to arrest a criminal is a complete protection to the Constable acting under it and those called on by him to assist in executing it.

APPEAL from the District Court of East Feliciana, *Ratliff,* J.
*W. F. Kernon* and *J. T. Heath,* for plaintiff. *Muse & Hardee* and *Bowman & Delee,* for defendants and appellants.

MERRICK, C. J. This is an action brought against the Mayor and Constable of the town of Jackson, and another for an alleged illegal arrest and ill treatment of the plaintiff while under arrest. The defendants appeal.

We are all agreed that the Mayor of the town of Jackson, under the Act of 1832 (p. 160), had the power to issue the warrant for the arrest of the plaintiff notwithstanding the Constitutions of 1845 and 1852, and as a consequence, that the warrant so issued was an ample protection to the Constable acting under it and those called upon by him to assist in executing the warrant.

A majority of the court are of the opinion also, that judgment ought to be rendered in favor of the Mayor who issued the warrant as well as the Constable who acted under it.

The power granted by the Act of 1832 to the Mayor was limited to certain criminal matters therein named, and thus was merely ministerial, but within these limits and the matters expressly confided to him, as efficient as that of the Coroner, as a conservator of the peace, or of any other magistrate. It is declared in the Act, that he shall be *ex officio* a Justice of the Peace within the limits of the town of Jackson and shall be commissioned accordingly, and that he shall have power to suppress all riots, routs, affrays, tumultuous assemblies, and all breaches of the peace, and arrest offenders in the same way and manner as Justices of the Peace may or can do. Sec. 4, No. 4, p. 160.

The Mayor and Trustees of the town by the same Act are empowered to pass by-laws for the government of said town, provided the same are not repugnant to the Constitution and laws of this State or of the United States. Sec. 4, No. 7.

The first section of an ordinance of the town approved 24th of March, 1854, is in these words : " Be it ordained by the corporate authorities of the town of Jackson in regular meeting convened ; That it shall be the duty of the Mayor to have the laws of the corporation strictly executed. When he may know *or information is given by others* of said laws having been violated by any person or persons, he shall *immediately issue a writ* commanding the Constable to take into his custody the person or persons so offending, and bring them before him for trial, and if upon the trial of said person or persons it shall appear that they have been guilty of a violation of any ordinance of said town, it shall be the duty of the Mayor to fine said person or persons in a sum not less than one dollar nor more than fifty dollars, and to order said person or persons to stand committed until said fine is paid."

The ordinance of the 10th day of April, 1854, prohibited the sale of spirituous liquors and imposed a penalty for its contravention not exceeding fifty dollars. See Acts of the Legislature, 1852, p. 83, 1854, p. 154.

36

MAGUIRE
v.
HUGHES.

The warrant was issued without affidavit and evidently under the erroneous belief that the ordinance first recited authorized the Mayor to issue it in that form on a written information merely. The warrant commences with this recital : "Information having been laid before me, that *John McGuire* has been guilty o f a violation of the laws of the State aforesaid, by selling spirituous liquors within the town of Jackson, State and Parish aforesaid, within the last thirty days," &c.

So soon as the accused was brought before the Mayor and he was informed that the warrant was illegal without an affidavit, he discharged the accused. There is nothing in the record to show or lead us to suppose, that the Mayor was not acting in the most perfect good faith and for what he deemed to be the public good, under a mistaken idea of the law of the case. He had power to issue the warrant and bind over the accused, as we all admit, but he ought not to have issued it without an affidavit. Ought he to be held personally responsible for a mere error of judgment? We think not. Under the peculiar system of the English common law it seems to have been held that a justice of peace is liable for an arrest under a warrant issued without affidavit, unless the offence be committed in his presence ; but this principle does not seem to be extended to any other case in which a discretion is vested in him. Under *that* law, it would seem that if a Justice of the Peace issue a warrant without the oath of the party complaining, it would be trespass, and he would be liable in damages, but if issued by the order of a Judge of a court of record or other high officer, it would be presumed to be a mistake. Such officers would not be liable. See Bacon's Abridgement, verbo Trespass D.

We do not think this principle of the English law ought to be admitted in Louisiana. A public officer, whether judicial or ministerial, acting in good faith, under a discretion vested in him by law, ought in general to be protected against an action for damages arising from an erroneous exercise of such discretion.

With us, Justices of the Peace in the country towns, and wards of country parishes, are mostly men without legal learning. In criminal matters they are often called upon to act upon sudden emergencies, and they have not time to consult men learned in the law as to the form of their proceedings. The interest of the public requires that they should act promptly ; now, to hold that they shall be responsible in damages for errors of judgment is to destroy their efficiency and prevent the best men from accepting the office.

Lord Mansfield said, one hundred years ago, in a criminal prosecution against two Justices, Young and Pitts, " If their JUDGMENT *is wrong*, yet their HEART and INTENTION *pure*, God forbid that they should be punished ; " and he declared " that he should always lean towards favoring them unless partiality, corruption or malice shall *clearly* appear." Mr. Justice Wilmot said, in the same case, " Then, the *sole discretion being in them*, the RULE is *invariable*, that this court will *never* interpose to punish a Justice of the Peace for a mere *error* in judgment." 1 Burrows, 562–3.

And so it has been held in Louisiana. It is laid down in 1 L. R., 136, speaking of a Justice of the Peace, 'that a Judge is not answerable *civiliter* for an error in judgment so long as he acts within his jurisdiction. Nor can it make any difference that his acts are considered ministerial ; if he is intrusted with a legal discretion in the exercise of his functions, although his orders in criminal matters conclude nothing and are not in that sense judgments, he ought to be protected in the honest discharge of his duties, notwithstanding his errors may subject parties to some inconveniences, and such seems to be the settled doctrine of this court. See the cases in 2 An., 968, and 5 An., 580.

We do not consider that in the conclusions to which we have arrived on this branch of the case, we are overruling any decisions upon the subject.

The action brought is a *civil suit* governed by the laws of Louisiana. We find the doctrine laid down in three decisions of our own courts, as we have announced it, and the question now is, shall we admit an exceptional case of the English law to overrule our own decisions? The rule of the English law has no force here except so far as it commands attention by the sole power of the reasons upon which it rests. We fail to perceive any sufficiently cogent, to authorize the introduction of the rule into Louisiana.

But the Article 4 to the amendments of the Constitution of the United States has been cited as having some application to this case. It is well known that the provision in question applies exclusively to the government of the United States, and is a restriction upon the powers of the general government. It is merely the enforcement of a well known rule of the common law carried into the Constitution for the protection of the citizen against the power of the General Government and has no application on a question under the State courts wherein an officer is sought to be made liable *civiliter* for an error of judgment in the exercise of a power conferred upon him. In the case of *Dwight* v. *Rice*, 5 An., 580, it was held that a ministerial officer acting in good faith would not be liable for damages arising from his act although the statute under which he acted should subsequently prove unconstitutional.

To prevent all misapprehension we take occasion to repeat, that we consider the enumerated powers conferred by the Act of 1852 upon the Mayor of Jackson as ministerial, that as such ministerial officer and a conservator of the peace, he had the power to issue a warrant for the arrest of *Maguire* for selling spirituous liquors without license, and to hold him to bail to answer the offence, but that the warrant issued by *Hughes* was not legal for want of an affidavit to support it; nevertheless, as he acted in good faith in issuing the warrant, he ought not to be held responsible for a mere error of judgment.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment against the plaintiff and in favor of the defendants, and that the plaintiff pay the costs of both courts.

SPOFFORD, J., dissenting. *M. W. Hughes*, Mayor of the town of Jackson and *ex officio* Justice of the Peace, and *N. G. Nosworthy*, Constable of the town of Jackson, have appealed from a judgment condemning them *in solido* to pay the plaintiff, *John Maguire*, forty-five dollars, as damages for an illegal and unwarranted arrest.

*Nosworthy* justifies himself by alleging that he acted under a warrant issued by a magistrate of competent authority and having jurisdiction in the premises.

*Hughes* pleads a similar defence, and urges that his conduct was legal, and if defective in any respect, that his good faith in the discharge of an official duty protects him.

Upon *Nosworthy's* defence it is only necessary to inquire whether the Mayor *Hughes* had jurisdiction to issue a warrant to arrest *Maguire* for an alleged offence against law. For, in executing the warrant, it appears that the resistance of the plaintiff made it necessary to use the violence which is charged upon him as an aggravation of a wrongful arrest.

By the Act of April 2d, 1832, incorporating the town of Jackson, it was provided that a Mayor should be chosen by the qualified voters of the said town,

<div style="text-align:right"><em>MAGUIRE<br>v.<br>HUGHES.</em></div>

MAGUIRE
v.
HUGHES.

(sec. 3), and that the said Mayor should be *ex officio* a Justice of the Peace within the limits of the town, and should be commissioned accordingly, with power to suppress all riots, routs, affrays, tumultuous assemblies, and all breaches of the peace, and arrest offenders in the same way and manner as Justices of the Peace may or can do." (Sec. 4, No. 4).

*Hughes* was duly elected and commissioned as Mayor of the town of Jackson and *ex officio* Justice of the Peace. While holding such a commission from the Governor of the State, in the month of February, 1855, he issued the warrant in question, commanding *Nosworthy*, the Constable, to arrest the plaintiff on a charge of violating *the laws of the State* by selling spirituous liquors, &c.

The plaintiff now contends that the Mayor of Jackson had no authority whatever to issue warrants of arrest for an infraction of the laws of the State, and no powers as a peace officer or committing magistrate, although such powers were expressly conferred upon him by the Act incorporating the town of Jackson.

The case of *Lafon* v. *Dufrocq*, 9 An., 352, is relied on as authority for this position.

The analogy is not perfect; that was the case of a civil suit for the recovery of a fine; and it was decided that the Mayor of Baton Rouge, since the Constitution of 1845, was without judicial power to entertain such an action.

The power here exercised of a peace officer and examining magistrate, is not strictly judicial, but rather ministerial or administrative; a Justice of the Peace acts judicially when he convicts and sentences an offender, or gives judgment for a sum of money; ministerially, in preserving the peace, hearing charges against offenders, issuing summonses or warrants, examining the informant and his witnesses, bailing the supposed offender or committing him for trial, &c. 1 Chit., Black., p. 354, No. 37.

So far at least as these latter duties are concerned, I am of the opinion that the Mayor of Jackson has not been stripped of the powers specially conferred upon him by the Act of 1832, in consequence of the adoption of the Constitution of 1852, and if the case of *Lafon* v. *Dufrocq* is inconsistent with this conclusion, I think, it should be, so far, overruled

When the Constitution of 1852 declared that " the judiciary power shall be vested in a Supreme Court, in such inferior courts as the Legislature may, from time to time, order and establish, and in Justices of the Peace," (Art. 61) it did not restrain the Legislature from conferring upon the Mayors of towns the usual police and ministerial powers of Justices of the Peace."

The Legislature may not make them Judges, or invest them with jurisdiction to try civil causes, or to pass finally upon alleged offences, but they may properly be clothed with the attributes of committing magistrates, and all such provisional powers as will enable them to preserve the good order and police of their respective towns. They are not Judges, but *quasi* Justices of the Peace, having their ministerial but not their judicial powers.

The power given by the Act of April 2d, 1832, to the Mayor of the town of Jackson " to arrest offenders in the same way and manner as Justices of the Peace may do," was not, in my opinion, impaired by the Constitutions either of 1845 or 1852.

It was for an imputed offence against a State law that *Mayor Hughes* issued his warrant to arrest the plaintiff. As he had power and authority vested in him by law to issue such a warrant, it follows by a well settled rule that the Constable acting under it in good faith, without notice of the Mayor's error, is protected, and we therefore think that the judgment against *Nosworthy* should be reversed.

But the Mayor was only empowered by the statute to "arrest offenders in the same way and manner as Justices of the Peace may or can do." He was bound to proceed in issuing his warrant, as a Justice of the Peace is bound to proceed, and, this being a ministerial proceeding, a Justice of the Peace would be civilly responsible for wilfully doing it contrary to law. As a Judge, a Justice of the Peace is not responsible civilly for deciding against the law; as a committing magistrate, he is civilly responsible for acting against the law.

Now, unless a magistrate acts *super visum* on his own positive and personal knowledge, or upon the confession of the party in his presence, he cannot lawfully issue a warrant of arrest without an affidavit accusing the party; and if he thus issues a warrant, without an oath of facts or circumstances raising a presumption of guilt, he is liable to an action in damages by the aggrieved party, for acting illegally in his ministerial capacity. See 1 East. Pleas Crown, 64; 2 Term R., 225; 2 Wils., 168; Hawkins P. C., b. 2, c. 13, s. 18; *Justice* v. *Gosling*, 8 Eng. Law et Eq. R., 475; *Taylor* v. *Alexander*, 6 Ham., 144; See also *Armstrong* v. *Campbell*, 2 Brevard, 259; *Wallsworth* v. *McCullough*, 10 John., 93; *Fluck* v. *Harrington*, Breese, 165; *Pratt* v. *Hill*, 16 Barb., 303; *Kennedy* v. *Terrel*, Hardin, 490; *Poulk* v. *Slocum*, 3 Black, 421; *Miller* v. *Grice*, 2 Rich., 27, and the American cases generally upon this topic.

It is to be remarked in the present case, that *Mayor Hughes* was not acting under a town ordinance; he was acting under the statute incorporating the town, which authorized him to arrest offenders just as Justices of the Peace might do, and he procured the arrest of the plaintiff for the alleged violation of a State law. An ordinance of the town declared that "when he may know, or information is given by others, of the *laws of the corporation* having been violated, he shall immediately issue a writ," &c., &c.

It is perhaps unnecessary to consider whether this town ordinance enlarged his discretion, because he was not acting under it.

So we have the naked question left, can the Mayor of Jackson, acting as a committing magistrate under the State law, order the arrest of any person in the town of Jackson for an imputed violation of the criminal law of the State without view, without confession, and without an information laid before him under oath?

I think he cannot, and that if he does so, he does it at his peril, and that, in case it turns out that there is no foundation for the imputed charge, the Mayor is responsible for the trespass to the party aggrieved. This doctrine with regard to the liability of peace magistrates for their ministerial action has been long and finally settled by the highest authorities in England and America, a few of which have been already cited. But it does not derive its whole or even its main support from arbitrary precedent. It is founded upon a wise forecast and has for its policy no less noble an end than to secure the personal liberty of the citizen from wanton infringement. Somebody must be held responsible for so grave an injury as the arrest of an unoffending citizen. When there is an information *under oath*, the magistrate is protected, but the party aggrieved has his remedy against the malicious informant. But if a magistrate, without view, without a confession of the party, acting upon an unsworn statement whispered in his ear by some unseen informer, may arrest an innocent citizen for any imputed crime and then escape responsibility under his official mantle, where is there a remedy for so atrocious a wrong? The framers of our composite system of laws, after drawing from Roman, French and Spanish sources, the great body of rules in civil matters, turned to England as the country where personal rights and the true harmony of liberty

<div style="margin-left:20px">MAGUIRE
v.
HUGHES.</div>

and law had been better understood than elsewhere.  They took thence the great body of our criminal law.  It accords with the law of our sister States, wherever the English language is spoken, the rule that a freeman shall not be arrested (unless *flagrante delicto*) without a previous accusation under oath, is regarded as a sacred shield.  Our ancestors, out of abundant caution, amended the Constitution of the United States to declare that " no warrants shall issue but upon probable cause, *supported by oath or affirmation*, and particularly describing the persons to be seized."  Amendments, Article IV.

And I do not think that the Mayor of the town of Jackson has any greater power than other committing magistrates.  It would require something more than a town ordinance to make such an innovation upon the law.

Entertaining these opinions, I cannot join my colleagues in repudiating the time-honored distinction between the civil liability of magistrates when acting judicially, and their liability when acting ministerially.  I do not think it was ever repudiated before in Louisiana.

In matters affecting the personal liberty of the citizen, I prefer to stand upon the ancient ways.

After reading the record, I am satisfied that the Mayor of the town of Jackson, in this instance, issued a process not according to law, but without such an information as the law requires ; that there was no probable cause for the arrest, nor indeed does it seem to have been pretended upon the trial that there was any ; and that the Mayor acted heedlessly and wilfully in arresting a citizen without disclosing any source of information, and without an accusation under oath.  The bare fact that he is a committing magistrate does not furnish him a legal justification.

For this conduct, I think he is responsible in damages, as a trespasser.  But, under the circumstances, I do not find that the jury of the vicinage erred in assessing damages so small as to be almost nominal.

For these reasons, I think the judgment against *Nosworthy* should be reversed, and that against *Hughes* affirmed.