### 3703.

### FACTORS AND TRADERS' INSURANCE COMPANY v. THE CITY OF NEW ORLEANS.

This case is held by the court to be governed by the one of Campbell v. the City of New Orleans, 12 An. 34. There is but one difference in point of fact. Campbell paid his taxes without objection or protest, and sought only to recover the amount back after it had been decided in a controversy between another party and the city, that the ordinance under which the assessment was made was unconstitutional. In the present case, the plaintiffs, before making their last payment for taxes, expressly stipulated with the City Treasurer, to whom their money was paid, that it should be returned in case there should be rendered a decision in a certain sense, by the court, in another pending controversy. But they *paid*, not because they were compelled to pay, but because they chose to pay, and, on the contrary, did not resist payment, as was done in the case upon the decision of which they were content to rest their case.

The stipulation by plaintiffs with the City Treasurer amounted to nothing, for it was not shown that he had authority to make the contract.

There was an unquestionable, natural obligation on the part of plaintiffs to bear their *quota* of the expenses of carrying on the municipal government of the city of New Orleans. The plaintiffs have enjoyed all the advantages and protection of that municipal government. To return to them the money which they have paid in consideration of these advantages, would be to give them the protection which they required for their persons and property, and make their fellow citizens pay for it.

The law under which plaintiffs paid their taxes, was in full force and vigor at the time. It is a fallacy to contend that it never had any life because it was unconstitutional.

Rights may be acquired under a law, notwithstanding that law may have been subsequently declared to have been unconstitutional.

To escape the penalties inflicted by a law, or avoid responsibilities imposed by it, upon the ground that it is unconstitutional, its unconstitutionality must be distinctly declared before the penalty or responsibility has accrued.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley,* J. *George S. Lacey,* City Attorney, and *H. H. Walsh,* Assistant City Attorney, for defendant and appellant. *Gibson & Austin,* for plaintiffs and appellees.

WYLY, J. The plaintiff sues the defendant for $10,175 56, the amount of a license tax paid by it to the defendant during the years 1867, 1868 and 1869, on the ground that the said tax was unconstitutional, because not equal and uniform upon all persons pursuing the business or occupation of insuring.

The court gave judgment for the amount claimed, and the defendant appeals.

The license tax collected from the plaintiff in 1867 was five-eighths of one per cent. on the amount of premiums received, and in 1868 and 1869 it was one and one-half per cent. on the amount of premiums.

Any percentage on the amount of premiums received is clearly unconstitutional, because all insurance companies do not receive the same amount of premiums. Article 124 of the Constitution of 1864, and article 118 of the Constitution of 1868, require that a license tax, as well as a tax on property, shall be equal and uniform. To be equal and uniform, the tax must be the same on all persons persuing the particular occupation or calling taxed, without reference to the abilities, fortunes or success of those engaged in it. City of New Orleans v. Home Mutual Insurance Company, 23 An.

"He who has received what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it." R. C. C., art. 2301.

Upon this article, and articles 2302 and 2304, the plaintiff relies to support its demand for the restitution of the amount improperly paid. The defendant, however, contends that there was a natural obligation, binding the plaintiff in conscience and natural justice to pay what was paid, and therefore, under article 2303, it can not be recovered. Article 2303 declares that "to acquire this right" (the right to receive what was improperly paid) "it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent the recovery."

It will be observed, from the plain provisions of article 2303, that in order to defeat the right of recovery there must be a natural obligation to pay "the thing paid;" to pay the particular debt that has been collected.

If A pays a forged note to B, recovery of the amount can not be defeated, because the latter may hold a natural obligation against him resulting from being the owner of another note that is prescribed.

The law in express terms only permits the action for repetition to be defeated where there was a natural obligation to pay the "thing paid;" that is, to pay the particular debt that has been paid. Now the inquiry is, not whether there was a natural obligation binding the plaintiff in conscience and natural justice to pay some other debt of equal amount to the city of New Orleans for the support of its government or otherwise, but it is simply whether there was a natural obligation to pay the particular debt or claim that was paid and which is alleged to be unconstitutional?

It is useless to pursue any other inquiry, because the defense announced in article 2303 is in precise terms, limited to the particular debt or claim paid.

The question then is, was the plaintiff under a natural obligation to pay an unconstitutional tax?

We say no. An unconstitutional ordinance of a municipal corporation is an absolute nullity; it was void from the beginning; it never had any obligatory force either in law or conscience.

To say that an assessment in direct violation of the constitution binds the citizen in conscience and natural justice, is an absurdity too manifest to require argument.

Until there is an assessment (and an unconstitutional assessment is no assessment) there is no debt; there is no obligation either natural or civil.

The amount collected from the plaintiff was unduly collected, because he never owed the debt; there was no ordinance of the city requiring of the plaintiff a license tax. What was supposed to be an ordinance requiring the assessment of the tax never had any existence, because it contravened article 124 of the constitution of 1864 and article 118 of the constitution of 1868.

In support of his position, counsel of the defendant cites several decisions of this court: 9 R. 325; 12 An. 34, 346, 421. In not one of these cases was the question now under consideration presented, to wit: Whether there is a natural obligation to pay an unconstitutional tax?

This court has never held that an unconstitutional tax imposes a natural obligation to pay.

A natural obligation is defined to be one that can not be enforced by action, but it is binding "in conscience and according to natural justice." Revised Code, 1757. How any act of the corporation of New Orleans, prohibited by the Constitution, can create an obligation binding "in conscience and according to natural justice," we can not imagine. In Isam J. Sims v. The Parish of Jackson, 22 An. 440, the question was, whether the plaintiff could recover from the defendant the amount of a cotton tax collected from him during the years 1865, 1866 and 1867, on the ground that said tax was not equal and uniform, and therefore it was violative of article 124 of the Constitution of 1864, then in force. The court held he could do so, and gave judgment against the parish of Jackson for the amount unduly collected of Sims. This is the only case to be found in our reports where the precise question now under consideration was presented.

While that decision stands, and we see no reason to overrule it, a party who has paid a municipal corporation an unconstitional tax may demand its restitution, or the restitution of the amount thereof.

Judgment affirmed.

---

Howell, J., *dissenting.* For the reasons given by the court in the case of Campbell v. New Orleans, 12 A. 34, I think the plaintiffs should

not recover. In my opinion, there is no distinction, in regard to the natural obligation, between a tax or license illegally imposed, that is, not in conformity to the mode prescribed by the statute, and one unconstitutionally imposed, that is, not in the mode prescribed by the Constitution. There was a natural obligation resting on the plaintiffs to contribute to the support of the city government, and the fact that the sum paid by them was not uniform with the sums paid respectively by other insurance companies, did not destroy that obligation. The principle announced in article 2303, R. C. C., if applicable to the subject of taxation, does not, I think, rest on the sum paid, but on the natural obligation to pay. It is not pretended that the plaintiffs were exempt from the payment of the license. On the contrary, article 118 of the Constitution is imperative that they " shall obtain a license, as provided by law." An assessment is only the means of carrying out the obligation to contribute to the support of the government.

I therefore dissent.

## On Rehearing.

Morgan, J. Plaintiffs seek to recover from the city of New Orleans $10,175 66, with legal interest on various amounts and from various dates, upon the ground that through error, or under protest, they paid to the city $1030 on the fourteenth January, 1867, for license tax for that year; $3892 56 on the twenty-ninth January, 1868, for license tax for for that year; and $5253 on twenty-seventh February, 1869, for license tax for that year. They aver that these various sums of money were exacted and collected from them by virtue of several ordinances of the city government, dated respectively twenty-seventh December, 1867, thirty-first December, 1868, twenty-ninth December, 1869.

They aver that these ordinances were in violation of the constitution of the State which was in force at the time they were enacted; that they were unequal, oppressive, and not uniform; and were, therefore, by reason of their unconstitutionality, absolutely null and void. They aver that the city has exacted and collected the various large sums related by them without the color or authority of law, and that it still retains them, in violation of the constitution.

Further they aver, that the city specially agreed to re'urn to them the sum of $5253, if the Supreme Court should declare the ordinance imposing this license tax under which this sum was collected unconstitutional, in a litigation which was pending when this license was paid; and that notwithstanding the decision of the Supreme Court which has declared the ordinance to be unconstitutional, the city persists in its refusal to return the same.

In their supplemental petition they aver, that the ordinances under

which they paid were so rigid that they were compelled to pay or incur the danger of having their place of business closed.

Defendant admits the receipt of the money, and admits that there was an agreement on the part of a city official to refund the money in case it should be decided, in the matter then pending between the city and the Mutual Insurance Company, that the ordinance was unconstitutional, but avers that the official aforesaid had no authority to bind the city. It further avers, that any money paid by plaintiffs for license tax was truly and justly due and owing to the city; that the money so paid was necessary for the purpose of defraying the expenses of the city; that it was faithfully appropriated to that purpose; and that plaintiffs have received their proportionate share of the benefit derived therefrom, in the protection of their interests and property.

They further allege, that if the plaintiffs were not legally bound to pay a license tax to the city, they were at least under a natural obligation to contribute their quota to the support of the municipal government from which they derived protection, and that under such circumstances an action will not lie to recover the several amounts alleged to have been paid, even though such payment had been made under protest.

It is not alleged nor, we believe, disputed that the money was not collected and disposed of in the manner and for the purposes set forth in the answer.

In principle, we think the case is governed by the case of Campbell v. the city of New Orleans, 12 An. 34.

In that case, as in this, Campbell paid to the tax collector a certain sum of money as his city tax for the year 1850. In that case, as in this, it did not appear that the money was paid under any compulsory warrant or execution. It is alleged here that if plaintiffs had not paid they incurred the risk of having their place of business closed, but it is not shown that they had been condemned to pay by any authority.

In that case, as in this, there was a judgment in a suit between the city and another party defendant, declaring the ordinance, under which the tax was proposed to be collected of him, unconstitutional. And there, as here, it was not denied that the money paid by the plaintiff was necessary for the purpose of defraying the expenses of the years for which they were collected. The court declared that the municipal authorities were virtually the plaintiff's agents for the purpose of laying such an assessment upon his taxable property as would defray his share of the necessary expenses of police, etc.; that the assessment was laid upon property legally liable to taxation, although they had neglected in so doing to pursue certain prescribed forms—a neglect which would have rendered the plaintiff's obligation to pay invalid *in foro legis*, if he had raised the objection in time and in the proper

manner.  The court considered that he was under a natural obligation to pay his proportion of the expenses of the municipal government and that, inasmuch as he had paid the amount assessed to him for that purpose, he had only discharged a natural obligation ; and as no suit will lie to recover what has been paid or given, in compliance with a natural obligation, gave judgment for the city.  If this opinion of the court be a correct exposition of the law, the plaintiffs have no case.

In one particular the controversy between Campbell and the city differs in point of fact from the case we are now considering, in this, that whereas Campbell paid without objection or protest, and sought only to recover after it had been decided in a controversy between another party and the city that the ordinance under which the assessment was made was unconstitutional, in this case the plaintiffs, before making the last payment, expressly stipulated with Mount, the City Treasurer, to whom the money was paid, that it should be returned in case this court should determine the case of the city v. another insurance company in a certain sense.  Still there was not any coercion on the part of the city, under force of which this payment was made There was no execution in the hands of the sheriff by which their property could have been seized in case they did not pay.  There was no judgment commanding them to pay.  They paid, not because they were forced to pay, but because they chose to pay.  They aver, it is true, that they were threatened with the close of their place of business in case they did not pay, but their relief from this apprehension was not by paying; on the contrary, it was by resisting payment, as the company did in the case upon the decision of which they were content to rest their obligation.  The stipulation with Mount, the Treasurer, amounts to nothing, for it is not shown that he had any authority to make the contract on the part of the city which the plaintiffs set up. If he was not able to bind the city, the stipulation which he made is not obligatory.  There was an unquestionable natural obligation on the part of the plaintiffs to bear their quota of the expenses of carrying on the municipal government of the city of New Orleans.  Their domicile is here; their business is done here; they have an interest in the paving and lighting of the streets, and the building and repairs of wharves; they have the same interest in the maintenance of a good police that other inhabitants of the city have, and it is of vital importance to the success of their company that the fire department should be kept in a state of proper efficiency.  None of these things can be done without money.  The money necessary to carry them on must be contributed by the citizens.  It is levied in the form of a tax or contribution, or by whatever name you may chose to call it, and when collected it is used for these purposes.  It is because of its general

ramifications, benefiting each and every inhabitant of the city alike, that each and every one of its inhabitants is under a natural obligation to contribute, in proportion to his means, toward the support of these departments, without which the place could not be lived in. Now, it is not pretended that plaintiffs have not enjoyed the advantages and protection of the municipal government. To return to them the money which they have paid in consideration of these advantages, would be to give them the protection which is requisite to their existence, and make their fellow-citizens pay for it.

There is, in our opinion, another reason why the plaintiff should not recover. It is, that the law under which the tax was paid was in full force and vigor at the time the money was paid. It is contended that it never had any life because it was unconstitutional; that an unconstitutional law is no law, and therefore must be considered as never having been written. This is a fallacy. The rule of universal application is, that all laws are presumed to be constitutional until the contrary is decided. Courts do not assume to themselves the prerogative of deciding on their own motion, that a law under which rights are claimed or duties are imposed is unconstitutional. To authorize them to do this the matter must be directly put at issue by the parties litigating before them. Rights can be acquired under a law which may be determined to have been unconstitutional, and pains and penalties be avoided by those who justify their acts as having been committed under a law, however that law may have been subsequently declared to have been unconstitutional. If a piece of property is sold under a *fi. fa.* issued in the case of A *v.* B, and C purchases it, if it should thereafter be determined in a litigation between D and C that the law under which A obtained his judgment against B was unconstitutional, would B be entitled to get back his property from C? If the Legislature passed a law regulating trials in criminal cases, and A, being indicted for murder, was tried under that law, found guilty, sentenced and was hung, and in the case of B, tried before the same tribunal for the same offense, B's counsel should, after conviction, and on a motion in arrest of judgment, convince the judge that the law under which he was trying the case was unconstitutional, and the prisoner be discharged, would the sheriff who had hung A be liable to be punished? Certainly, if the position contended for be correct that an unconstitutional law is *ipso facto* null and void, for the killing would have been unlawful; it would have been willful, and would have been perpetrated upon a reasonable being, who was, when the killing was done, in the peace of the commonwealth. Such a result, so monstrous, is only to be avoided by adhering to the rule that to escape the penalties inflicted by a law, or to avoid responsibilities imposed by a law

upon the ground that it is unconstitutional, its unconstitutionality must be distinctly alleged before the penalty is imposed or the responsibility is determined.

It is therefore ordered, adjudged and decreed that the judgment heretofore rendered by us be set aside, and it is now ordered, adjudged and decreed that the judgment of the District Court be avoided, annulled and reversed, and that there be judgment in favor of the defendants with costs in both courts.

---

WYLY, J., *dissenting.* I adhere to the first opinion delivered by this court in this case, and I reserve the right to file an additional argument in support of my position.

---

LUDELING, C. J., *dissenting.* I am constrained to dissent from the opinion of a majority of my associates. I adhere to the opinion originally rendered in this case, which I think is in accordance with the law and jurisprudence of this State. Article 2301 of the Civil Code provides that "He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he unduly received it." Article 2302 says: "He who has paid through mistake, believing himself a debtor, may reclaim what he has paid." "To acquire this right, it is necessary that the thing paid should not be due in any manner, either civilly or naturally. A natural obligation to pay will prevent the recovery." The same doctrine is announced in the Institutes of Justinian, lib. 111, tit. 28, De Solutione Indebiti, Cooper, p. 292; in Pothier, vol. 1, chaps. 1 and 2; in Domat, No. 1520, and in Larombiere. "Le paiement fait sans cause oblige a restitution celui qui l'a reçu." Vol. 5, 612 et seq.

I can not conceive how there can be a natural obligation to pay an illegal tax. A tax can only be imposed by law; if any obligation springs from the law, it must be a legal obligation. In my opinion the original decree should remain undisturbed.