(102 So. 76)

No. 26036.

BERRY et al. v. BASS et al.

(Nov. 3, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Arrest ⬤⟹68—One merely notified to appear before magistrate not under "arrest."**

While actual use of force is not necessary to constitute arrest, intention to arrest (i. e., to take into custody) must be present and evidenced by unequivocal act, as by keeping arrested party in sight and controlling his actions, and one merely told to consider himself under arrest, or to appear before magistrate, is not under arrest, whether such notice or summons be complied with, or compliance be caused by fear of consequences of noncompliance, or not.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arrest.]

**2. Constitutional law ⬤⟹56—Courts ⬤⟹160— Legislature held authorized to establish municipal courts to enforce municipal ordinances.**

Authority conferred by Const. 1898, art. 96, to provide for establishment of municipal courts to enforce purely municipal ordinances, cannot be questioned, after general acquiescence therein for over 25 years, in actions against mayor and town marshal for false arrest and imprisonment, on ground that Act No. 136 of 1898, § 29, establishing mayor's court with jurisdiction over violations of ordinances, violates Const. 1898, art. 84.

**3. False imprisonment ⬤⟹7(2)—Validity of ordinance held not subject to attack by persons convicted thereunder.**

Proceedings before mayor, on charge of disturbing peace, being valid, though informal, and within his jurisdiction, under Act 136 of 1898, § 29, defendants cannot mulct mayor and marshal in damages for false arrest and imprisonment, after sentence was imposed and fully executed, on ground of unconstitutionality of ordinance under which they were convicted, without having challenged its validity at time of hearing in absence of evidence of malice.

**4. False imprisonment ⬤⟹7(2)—Mayor, erroneously imposing sentence of imprisonment without alternative of fine, not liable for damages.**

Mayor, imposing sentence of imprisonment for breach of peace without alternative of fine, under ordinance authorizing imprisonment only in default of payment of fine, is not liable for damages for false arrest and imprisonment, in absence of bad faith, malice, or corruption; inferior magistrates like superior court judges, not being liable for mere errors in judgment, even in respect to extent of jurisdiction or powers under laws they are called on to enforce.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; Thos. F. Porter, Jr., Judge.

Actions by Mrs. Louis Berry and Laussard Dupuy against John Bass and another. From judgments for plaintiffs in unsatisfactory amounts, they appeal. Reversed and rendered.

Modisette & Adams, of Jennings, for appellants.

J. H. Heinen and Miller & Miller, all of Jennings, for appellees.

By the WHOLE COURT.

ST. PAUL, J. These are two cases, consolidated for trial, in which Mrs. Louis Berry and one Laussard Dupuy seek to recover damages in solido from John Bass and one John Fletcher, respectively mayor and town marshal of the town of Lake Arthur. From a judgment in favor of Dupuy against both defendants for $5 for *false arrest* (i. e., without a warrant), and another in favor

of Mrs. Berry against Bass, alone, for $20 for *false imprisonment*. Both plaintiffs have appealed, seeking to have said judgments increased, and both defendants have answered said appeal, praying that both judgments be reversed in toto.

## I.

The practically undisputed facts of this case, so far as they are pertinent to the issues involved, are substantially as follows:

Two itinerant picture dealers (husband and wife) complained verbally to the mayor that, in a controversy over the delivery of some pictures, plaintiffs had cursed and abused them; whereupon the mayor verbally directed the marshal to notify the plaintiffs (that being the usual proceeding in such cases) to appear before him, the mayor, on the next morning, and answer to a charge of disturbing the peace.

The marshal did as directed; he notified both plaintiffs to appear before the mayor next morning. This they did, and were both tried and adjudged guilty. Dupuy was fined, and his fine was paid. Mrs. Berry was sentenced to 24 hours' imprisonment, without alternative of a fine; but was released after some two hours' detention, when the mayor was told that she was not in good health.

## II.

*As to the alleged false arrest:*

[1] The trial judge says:

"There is, however, this difference in the two cases. There was no claim made that Mrs. Berry was arrested prior to her trial. * * *"

But we do not see this difference.

Mrs. Berry testified:

"Question: When you were arrested, what did the marshal say to you? (Objected to because it assumed a fact not proved. Objection overruled.) Answer: He told me to report to the pressing shop (mayor's court) because I had trouble with a woman that bring some pictures in my house."

Dupuy testified:

"Question: You have known Mr. Fletcher, the marshal, for a long time? Answer: Yes.

"Question: He didn't arrest you—he never touched you? Answer: No; he tell me to come to court, 9 o'clock next morning."

The marshal testified:

"Question: I will ask you if your notices or summons to these people were such as you generally use in bringing people into court? Answer: Yes, sir.

"Question: You went to their house and told them that they should appear at the mayor's court at a certain hour for a certain purpose? Answer: Yes, sir.

"Question: You didn't have any paper (warrant) with you? Answer: No."

The trial judge says (in Dupuy's case):

"Upon receiving this instruction (verbally, from the mayor) defendant, the marshal, rode around on horseback to the plaintiff's (Dupuy's) home, and, without getting off his horse, told the plaintiff (Dupuy), who was about 12 feet distant, and in his yard, to appear in court the next morning for trial on a charge of disturbing the peace. At the appointed time and place plaintiff appeared for trial."

We hold that the foregoing facts do not show an *arrest*.

In 5 Corp. Juris, 386, verbo "Arrest," § 2, it is said that:

"The custody or control, the assumption of which is involved in an arrest, imports actual restraint or detention; the mere utterance of words indicative of an arrest being insufficient (except perhaps when followed by submission), as is also the reading or verbal proffer of the warrant without more, or mere personal service of process."

It must be said, however, that there is conflict between the authorities as to whether mere compliance with a notice or summons to appear before a magistrate is such a "submission" as to constitute an arrest. 5 Corp. Jur. 386, 387, notes 8–20. And this court has once held that there had been an arrest, where defendant had called upon a deputy sheriff, who happened to be present, to arrest plaintiff, and "the deputy sheriff told plaintiff to consider himself under ar-

rest and to report at the justice of the peace court the next morning at 9:30." Thomas v. Henderson, 125 La. 292, 51 So. 203. But not one authority is cited, nor a single reason given for the holding.

Now, we are quite ready to admit that the *actual use of force* is not necessary to constitute an arrest; but the intention to arrest, i. e., to take into custody, must be there, and must be evidenced by some unequivocal act, as by keeping the arrested party in sight and controlling his actions. But one person can no more arrest another by simply telling him to "consider himself under arrest" and then turning on his heel and leaving that person free to go his own way, than one can commit a homicide by merely telling another to consider himself dead. On the contrary, the very purpose of merely notifying a person charged with some offense simply to appear before a magistrate is precisely *to avoid arresting* him therefor; it is precisely *not* to deprive him of his liberty for the time being; it is for the very purpose of leaving him master of his own movements until the time fixed. And the person so notified or summoned is no more under arrest than a *witness* summoned or notified to appear before a magistrate on a given day. Nor is the fact that he is told to "consider himself under arrest" any more potent to make him be under arrest, than his being told to consider himself an emperor's son to make him a crown prince.

And whether or not such notice or summons be complied with, and, if so, whether such compliance be or be not because of fear of the consequences, whatever those may be, should he fail to comply, is wholly beyond the present question; since the fact remains that such person is *not* under arrest for the time being, but is master of his own movements.

In Barry v. Adamson, 6 Barn & Cres. 528, 13 Eng. Com. Law, 242, 108 English Reprint, 546 (cited 5 Corp. Jur. 386, 387, notes 8a, 19c), where the officer simply gave notice of the writ and asked defendant to fix a time for giving bail, it was held that there was no arrest, although defendant complied with the request of the officer, and afterwards appeared and gave bail.

In Connor v. Spark, 6 Modern, 173, 87 Eng. Reprint, 928; 1 Salkeld, 79, 91 Eng. Reprint, 74 (cited in 5 Corp. Jur. 386, note 10a), the court said:

"Here was no arrest, the bailiff having not laid hands on the defendant; for his shewing the writ, and pronouncing the word 'arrest,' without touching him, was no more an arrest than it would be one if a bailiff sees a man look out of a window, a pair of stairs or two high, and tells him he has a writ for him, and says that he arrests him."

In Arrowsmith v. Le Mesurier, 2 Bos. & Pul. New Rep. 211, 127 Eng. Reprint, 605 (cited 5 Corp. Jur. 387, note 19b), Lord Mansfield, C. J., said:

"I can suppose that an arrest may take place without an actual touch, as if a man be locked up in a room; but here the plaintiff went voluntarily before the magistrate. The warrant was made no other use of than as a summons. The constable brought a warrant, but did not arrest the plaintiff. How can a man's walking freely *to* a magistrate prove *him* to be arrested?"

And although this ruling was dissented from in Warner v. Riddiford, 4 Com. Bench, N. S. 180, 93 Eng. Com. Law, 180, 140 Eng. Reprint, 1052 (cited 5 Corp. Jur. 387, note 19b), yet we think the ruling sound to the extent that a mere notice or summons to appear before a magistrate, does not amount to an arrest, even though accompanied by an admonition to the person so notified or summoned that he is *to consider himself under* arrest, and even though complied with by such person. And to the extent that Thomas v. Henderson, 125 La. 292, 51 So. 203, conflicts with this holding, it is to be considered overruled.

### III.

*As to the alleged false imprisonment:*

[2] It is contended that the imprisonment of Mrs. Berry by the mayor amounted to false imprisonment, for these reasons:

(1) That said mayor had no judicial power; because section 29 of act 136 of 1898, pp. 224, 238 (establishing a "mayor's court" in cities, towns, and villages, incorporated under the provisions of that act, with jurisdiction over violations of municipal ordinances, and empowering the mayor to try all breaches of said ordinances and impose the fines and imprisonments therein provided), is violative of article 84 of the Constitution of 1898, under which said statute was passed.

(2) That the ordinance under which plaintiffs were convicted is unconstitutional and illegal on various grounds.

(3) That said ordinance did not authorize the mayor to inflict imprisonment except as an alternative for the nonpayment of a fine, and consequently said mayor exceeded his authority when he imprisoned Mrs. Berry without the alternative of a fine.

(A) Article 84, Const. of 1898, provided that the judicial power should be vested in a Supreme Court, Courts of Appeal, district courts, justices of the peace, "and in such other courts as are hereinafter provided for." And article 96, thereof, contained the following clause:

"No judicial powers, except as committing magistrates in criminal cases, shall be conferred on any officer other than those mentioned in this title, *except such as may be necessary* in towns and cities. * * *" (Italics ours.)

The convention which adopted the Constitution of 1898 was called by the General Assembly elected in April, 1896, for a term of four years, and continued in office until 1900 by the Constitution of 1898. See Schedule (art. 325, par. 5). See Act 52 of 1896, p. 85.

The second session of that General Assembly was begun a few days after the convention adjourned. See ordinance, postponing the session of the General Assembly, annexed to that Constitution.

It is well known that more than a score of the members of the convention were also members of the General Assembly, and it was never doubted by the members of that General Assembly, nor by any one since, that the clause in article 96, italicized above, fully authorized, and was particularly intended to provide for, the establishment of municipal courts for the enforcement of purely municipal ordinances. And whilst the provision is not altogether as clear as it might be, it is yet clear enough, and it is now entirely too late to question an authority, *absolutely necessary* for the proper policing of municipalities, promptly exercised by the General Assembly, and openly acquiesced in by all for above a quarter of a century.

[3] (B) The proceedings before the mayor whilst informal were none the less perfectly valid (State v. Fisher, 50 La. Ann. 45, 23 So. 92; Gammage v. Mahaffey, 110 La. 1008, 35 So. 266), and the mayor had jurisdiction over the offense charged. It was therefore incumbent on the accused, if they wished to challenge the constitutionality or legality of the town ordinance, to do so then. They cannot be permitted to remain silent when they should have spoken, and, after sentence has been imposed and fully executed, to mulct in damages those whose duty it was to enforce the ordinance as it stood, and who were without right on their part to question its validity.

In Factors & Traders' Ins. Co. v. City of New Orleans, 25 La. Ann. 460, this court reasoned thus:

"It is contended that it [this statute] never had any life because it was unconstitutional; that an unconstitutional law is no law, and therefore must be considered as never having been written. *This is a fallacy.* The rule of universal application is that all laws are presumed to be constitutional until the contrary is decided. Courts do not assume to themselves the prerogative of deciding on their own motion, that a law under which rights are claimed or duties are imposed is unconstitutional. To authorize them to do this the matter must be

directly put at issue by the parties litigating before them. *Rights can be acquired under a law which may be determined to have been unconstitutional and pains and penalties be avoided by those who justify their acts as having been committed under a law, however that law may have been subsequently declared to have been unconstitutional.* If a piece of property is sold under a fi. fa., issued in the case of A v. B, and C purchases it, if it should thereafter be determined in a litigation between D and C that the law under which A obtained his judgment against B was unconstitutional, would B be entitled to get back his property from C? If the Legislature passed a law regulating trials in criminal cases, and A, being indicted for murder, was tried under that law, found guilty, sentenced, and was hung, and, in the case of B, tried before the same tribunal for the same offense, B's counsel should, after conviction, and on a motion in arrest of judgment, convince the judge that the law under which he was trying the case was unconstitutional, and the prisoner be discharged, *would the sheriff who* had hung A be liable to be punished? Certainly, if the position contended for be correct that an unconstitutional law is ipso facto null and void, for the killing would have been unlawful; it would have been willful, and would have been perpetrated upon a reasonable being, who was, when the killing was done, in the peace of the commonwealth. *Such a result, so monstrous, is only to be avoided by adhering to the rule that to escape the penalties inflicted by a law, or to avoid responsibilities imposed by a law, upon the ground that it is unconstitutional, its unconstitutionality must be distinctly alleged before the penalty is imposed or the responsibility is determined.* [Italics ours.]"

In Dwight v. Rice, 5 La. Ann. 580, it was held that the commissioners of an election who act in good faith under an act of the Legislature, prescribing the mode of conducting elections, are not responsible in damages for rejecting a vote under that act, although the law upon subsequent investigation before the courts should be pronounced unconstitutional.

In the course of the opinion the court said:

"The condition of a public officer would be hard, indeed, if, while he followed the very dictate of a statute, believing it to be constitutional, and which had not been the subject of judicial investigation and decision, he should be condemned to pay damages for so doing, even if [because] the statute should be subsequently considered unconstitutional by the judiciary."

But it would be otherwise had the commissioners acted "maliciously and without just ground." Bridge v. Oakey, 12 Rob. 638. See, also, same case, 2 La. Ann. 968.

We quote from this case (Judge Martin's last opinion) to show that the sole basis for a cause of action against a judge is *malice.* Thus:

"The counsel of the defendant and appellee has likened the case of his client to that of a judge who is not responsible in damages for his judicial opinions. To this it was replied that inspectors of elections are not judges, and that, although the latter may not be answerable in damages for erroneous judgments, they may be, *when the injury they have inflicted does not proceed from error, but from malice.*

"The plaintiff's counsel is *fully supported* by the case of Jenkins v. Waldron, 11 Johnson (N. Y.) 114, 6 Am. Dec. 359, which is one in point, and the grounds on which it was decided, conclusive." (Italics ours.)

In the case before us there is no evidence whatever that the defendant mayor acted with malice; on the contrary, the evidence shows that he acted with the utmost good faith and fairness.

[4] (C) The pertinent parts of the ordinance under consideration read as follows:

"Section 1. Whoever shall in this village willfully disturb the peace of another by violent or tumultuous, offensive or obstreperous conduct or carriage, or by loud or unusual noises, or by profane, obscene or offensive language, calculated to provoke a breach of the peace * * * shall be guilty of disorderly conduct. * * *

"Section 4. Any person convicted of disorderly conduct as defined in this ordinance shall be punished by a fine of not less than $5 nor exceeding $100, and in default of payment of such fine and costs of prosecution may be imprisoned in the village jail at hard labor at the discretion of the court having jurisdiction thereof."

The complaint of Mrs. Berry is, as aforesaid, that she was not given the alternative of fine *or* imprisonment in accordance with the provisions of the ordinance, but given a

straight sentence of imprisonment for 24 hours (and actually detained 2 hours).

It is clear the mayor erred. The ordinance authorized only the imposition of a fine, with imprisonment only in default of payment thereof.

The trial judge says:

"There is not the least evidence in the record showing or tending to show that either the mayor or his constable acted in any way other than in absolute good faith, and in the honest belief that they were rightfully performing their public duties."

The mayor testified as follows:

"Question: Did you read the ordinance over that day? Answer: Yes.

"Question: Don't you know that that ordinance gave you no authority to send any one to jail without giving them first an opportunity to pay a fine, and in default of fine to send them to jail. Answer: I overlooked it.

"Question: You admit the sending her to jail was not authorized? Answer: I thought at the time I was right; after, I found out I was wrong."

We are satisfied, as was the district judge, that this was an honest mistake.

But *in one sense* the mayor *exceeded his jurisdiction;* that is to say, he imposed a penalty unauthorized by the ordinance, and therefore *in excess* of his powers. But it is none the less true that in imposing that sentence he was acting judicially and without malice. But, as he is only an *"inferior magistrate,"* the question arises whether he is liable in damages for his error in inflicting a penalty beyond that authorized by the ordinance, or is he protected by his judicial capacity.

In Bore v. Bush, 6 Mart. (N. S.) 1, a justice of the peace had tried and condemned without a jury a free man of color. The court held that, as the offense was triable only by jury and the justice had no right to summon a jury, he was acting beyond his jurisdiction in taking cognizance thereof, and that, notwithstanding he was acting "according to the best of his understanding,"

he was none the less liable for false imprisonment.

In Lafon v. Dufrocq et al., 9 La. Ann. 350, it was held that a mayor and his constable, whose court was organized under an unconstitutional law, were liable in damages for false imprisonment "under color of authority which they did not possess," although acting in good faith and believing themselves clothed with due authority under the act of the Legislature. Their good faith was considered only as tending to mitigate the damages. They were held bound to take notice of their want of jurisdiction; i. e., of the unconstitutionality of the law under which the court was organized (as to which, however, see Factors' & Traders' Ins. Co. v. City of New Orleans, 25 La. Ann. 460, and Dwight v. Rice, 5 La. Ann. 580, cited supra).

In Estopinal v. Peyroux, 37 La. 477, this court said:

"The rule, as settled in our jurisprudence, is that in order to claim immunity for errors growing out of his official acts and judicial functions, a justice of the peace must not only show that he had jurisdiction of the matter brought before him, but also that he acted in the premises within the limits of his judicial authority and of his jurisdiction." Citing: Bore v. Bush, 6 Mart. (N. S.) 1, supra; and Dressen v. Cox, 2 Mart. (N. S.) 631; Buquet v. Watkins, 1 La. 131; Maguire v. Hughes, 13 La. Ann. 281, infra.

In Dressen v. Cox, 2 Mart. (N. S.) 631, the defendant apparently *had* jurisdiction, and the court said:

"The defendant is not responsible for giving an erroneous judgment in his character of justice of the peace, admitting that which he rendered to have been such, and nothing on the record shows that he acted maliciously or corruptly."

In Buquet v. Watkins, 1 La. 131, the facts were that, while defendant was acting and sitting as a justice of the peace, the plaintiff was guilty of contemptuous conduct towards him, and in consequence thereof the defendant ordered plaintiff to be imprisoned for a

space of two hours "in the jail, *or stocks*, there being no jail in the parish." The court held that the justice had jurisdiction to try the question of contempt, and that "a judge is not answerable civiliter, for an error in judgment, so long as he acts within his jurisdiction"; but as the justice had authority to punish for contempt only by imprisonment, not exceeding 24 hours, the court *reserved the question* "whether the defendant, by ordering the plaintiff into the stocks, in a parish where there was no jail to confine him, so acted out of his jurisdiction as to make him responsible in damages to plaintiff," and the case was remanded for a new trial (because of the admission of some incompetent evidence).

In Maguire v. Hughes, 13 La. Ann. 281, the court held that the error of a magistrate (mayor, and ex officio justice of the peace), in issuing a warrant without an affidavit, will not render him liable in damages if he acted in good faith and for what he deemed the public good. Citing: Buquet v. Watkins, 1 La. 131; Bridge v. Oakey, 2 La. Ann. 968; Dwight v. Rice, 5 La. Ann. 580.

The court there said:

"A public officer, whether judicial or ministerial, acting in good faith, under a discretion vested in him by law, ought in general to be protected against an action for damages arising from an erroneous exercise of such discretion.

"With us, justices of the peace in the country towns, and wards of country parishes, are mostly men without legal learning. In criminal matters they are often called upon to act upon sudden emergencies, and they have not time to consult men learned in the law as to the form of their proceedings. The interest of the public requires that they should act promptly; now, to hold that they shall be responsible in damages for errors of judgment is to destroy their efficiency and prevent the best men from accepting the office.

"Lord Mansfield said, one hundred years ago, in a criminal prosecution against two justices, Young and Pitts, 'If their *judgment is wrong*, yet their *heart and intention pure*, God forbid that they should be punished;' and he declared 'that he should always lean towards favoring them unless partiality, corruption or malice

shall *clearly* appear.' Mr. Justice Wilmot said, in the same case, 'Then, *the sole discretion being in them, the rule is invariable,* that this court will *never* interpose to punish a justice of the peace for a mere *error* in judgment.' 1 Burrows, 562, 563."

In State ex rel. Duffard v. Recorder, 45 La. Ann. 1299, 14 So. 66, the court held that the action of the recorder in refusing an appeal to which the defendant was entitled, on the ground that the same issues had already been decided by the Supreme Court adversely to defendant's contentions, and that defendant was seeking only to abuse the right of appeal, was *"totally unwarranted."*

But the court said further:

"The respondent judge in his answer contends that; even though he may have erred in declining to grant the appeal, the costs of the present proceedings [mandamus] should not be thrown upon him, as he acted in good faith according to his best judgment and in the public interest, as the same appeared to him, and as a public officer. Although the action of the city judge in this matter was unjustifiable, *reasons of public policy protect him from being made to pay the costs*—they must be borne by the city of New Orleans." (Italics ours.)

In all the foregoing it will be observed that our court has laid no special stress upon any distinction between *inferior magistrates* and *judges* of superior jurisdiction, nor yet even between *judicial* and *ministerial* officers; but the cause of action has been laid principally upon *malice and corruption.* It is true it was twice laid on *want of jurisdiction* (Bore v. Bush, 6 Mart. [N. S.] 1, and Lafon v. Dufrocq et al., 9 La. Ann. 350); but in Buquet v. Watkins, 1 La. 131, the court (Martin, J.) was not prepared to say that the mere imposition (in good faith) of a penalty beyond that provided for by law was such acting *out of the jurisdiction of the court* as authorize the infliction of damages, and in both Maguire v. Hughes, 13 La. Ann. 281, and State ex rel. Duffard v. Recorder, 45 La. Ann. 1299, 14 So. 66, the court said that reasons of public policy were against

penalizing magistrates for mere errors of judgment in the discharge of their duties, even though such error might be *totally unwarranted and unjustifiable.*

In Ruling Case Law, vol. 11, p. 815, § 28, it is said:

"In the later cases a clear tendency has been evidenced to abolish altogether the discrimination between judges of different rank, and to extend to justices of the peace and other lesser judicial officers immunity from personal responsibility for the correctness of their decisions and acts, to the same extent that it is granted to judges of the superior courts." * * *

Our conclusion, therefore, is that there is *no sound reason for holding inferior magistrates* to any greater accountability in the exercise of their functions than the judges of superior courts, and that where they have exercised their functions in good faith, without malice or corruption, they should not be held liable for errors of judgment, even in respect to the extent of their jurisdiction, or of their powers under the laws which they are called upon to enforce.

And for these reasons we think the judgments appealed from should be reversed.

### Decree.

The judgments appealed from are therefore reversed, and it is now ordered that there be judgment in favor of the defendants, John Bass and John Fletcher, and against the plaintiffs, Mrs. Louis Barry and Laussard Dupuy, rejecting their demands at their cost in both courts.