337 So.2d 627 (1976)
Mr. and Mrs. Carrol CONQUES, Plaintiffs and Appellants,
v.
John M. HARDY, Defendant and Appellee.
No. 5580.
Court of Appeal of Louisiana, Third Circuit.
September 7, 1976.
*628 Walter J. Landry, Lafayette, for plaintiffs and appellants.
J. Burton Willis, St. Martinville, for defendant and appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
Plaintiffs seek damages resulting from the issuance of an unlawful warrant for the arrest of their 9 year old son. Defendant is the justice of the peace who issued the warrant. The trial judge rejected plaintiffs' demands. Plaintiffs appealed. Defendant answered the appeal, seeking damages for frivolous appeal.
The decisive issue is whether the defendant is protected by the rule of judicial immunity.
On suggestion of the trial judge, counsel for all parties requested that no written record be made of the evidence introduced at trial. After the appeal, the parties could not agree on a narrative of facts, so the trial judge wrote a narrative, which is conclusive under the provisions of LSA-C.C.P. Article 2131.
The facts disclosed by the trial judge's written narrative of facts are as follows: The actions giving rise to this lawsuit began during a recess at a Breaux Bridge Elementary School. One of a group of boys on the playground tapped or slapped the back of Edward Conques' head. In response, Edward turned and hit Joseph Benoit in the stomach, thinking it was Joseph who had slapped him. A minor scuffle ensued between the two 9 year old boys. They were separated immediately. Neither was injured.
The parents of each child filed an affidavit for the arrest of the other. Edward Conques' father, Carrol, first made a complaint to the defendant that Joseph Benoit had hit his son, Edward, "in the head with his fist". Defendant accepted this complaint, with the understanding that Carrol Conques would file an affidavit later to form the basis for a warrant of arrest. Four days later, Conques did file an affidavit against Joseph Benoit, which resulted in Joseph's arrest. Defendant did not even know Mr. Conques before this incident.
After his arrest, Joseph was taken to the parish jail, booked, charged and finally released after several hours to the custody of his parents. When Joseph returned home, his father, Harold, asked him how the altercation between him and Edward occurred. Subsequently, Harold Benoit went to defendant, explained the incident again and executed an affidavit that Edward had hit his son, Joseph, "in the stomach with his fist." In response to the filing of this affidavit, defendant issued a warrant for the arrest of Edward Conques. A deputy sheriff executed this warrant by taking Edward and his parents to jail where Edward was booked, charged, and released within a half hour to the custody of his parents. The record does not show the nature of the crime with which either boy was charged.
There are minor differences between the facts stated in the trial judge's narrative and the facts developed at a trial of plaintiff's earlier suit against the sheriff of St.
*629 Martin Parish for damages resulting from the arrest. See Conques v. Fuselier, 327 So.2d 180 (La.App. 3rd Cir. 1976). The record of the earlier trial was not introduced into evidence in this case, however, so our review is limited to the trial judge's conclusive narrative of facts.
The alleged tortious conduct in this case is the issuance of an unlawful arrest warrant. LSA-R.S. 14:13 provides that "Those who have not reached the age of ten years are exempt from criminal responsibility." Plaintiffs argue their nine year old son was exempt. They also argue that since a justice of the peace has no juvenile jurisdiction, the defendant had no jurisdiction to issue the arrest warrant.
One of the judicial functions of justices of the peace is the issuance of arrest warrants in cases where it is believed that an offense has been committed. LSA-C.Cr.P. Articles 202 and 931. Since the conduct complained of is a judicial function, the doctrine of judicial immunity is relevant. The immunity issue must be decided before we address the merits of plaintiffs' claim.
Plaintiffs argue that defendant cannot now raise a judicial immunity defense because he failed to plead it specially as an affirmative defense in his answer, which was in the form of a general denial. Judicial immunity is not one of the affirmative defenses enumerated in Article 1005 of our Code of Civil Procedure Article 1005. Other affirmative defenses are identified on a case by case basis. Plaintiffs cite no Louisiana cases, and we found none, specifically declaring judicial immunity to be an affirmative defense. Based on the following test, however, we have concluded that judicial immunity is an affirmative defense:
"An affirmative defense raises new matter, which, assuming the allegations of the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits." Webster v. Rushing, 316 So.2d 111 (La.1975).
In practice, judicial immunity has been pleaded as an affirmative defense. See Bore v. Bush, 6 Mart.(N.S.) 1 (1827); Buque v. Watkins, 1 La. 131 (1830).
If the rule requiring special pleading of affirmative defenses admitted of no exceptions, defendant's failure to plead judicial immunity could prevent our considering the issue. It is now well established, however, that "notwithstanding LSA-C.C.P. Article 1003 and 1005, pleadings may be enlarged to include an affirmative defense not specifically plead[ed], where evidence supporting such a defense is introduced without objection." Edwards v. Edwards, 282 So.2d 858 (La.App. 1st Cir. 1973), writ refused, 284 So.2d 777 (La.1973); LSA-C.C.P. Article 1154.
We have no written trial record to determine whether evidence supporting the defense of judicial immunity was admitted without objection. However, any doubt that such evidence was admitted is dispelled by the trial judge's written reasons for judgment, which state that the evidence shows defendant is shielded from liability by judicial immunity. In cases where there is no evidence to review, or, similarly, where the judge's written narrative of facts is not specific, the presumption is that the judgment of the trial court is supported by sufficient competent evidence. See Hutcherson v. Welch, 316 So.2d 144 (La.App.1975). For these reasons we find that defendant's answer has been enlarged to include the affirmative defense of judicial immunity.
The rule of pleading affirmative defense especially is designed to give fair notice of the nature of the defense to prevent surprise. As a practical matter, plaintiff had abundant notice of defendant's intent to base his defense on judicial immunity. A pretrial exception of "No Cause Or Right Of Action", which was pretermitted by the trial judge, alleged judicial immunity.
Having disposed of the procedural point, we now address the merits of the issue of judicial immunity. Plaintiff's principal argument against immunity for Justice of the Peace Hardy is that he was acting beyond his jurisdiction when he issued the warrant of arrest for young Conques. In plaintiff's earlier suit against the *630 sheriff of St. Martin Parish (Conques v. Fuselier, supra), we said: "Justice of the Peace Hardy improperly issued a warrant for young Conques' arrest without jurisdiction over the minor. . . ." Our authority for this conclusion is LSA-R.S. 13:1569 and 13:1570, which exclude justices of the peace from the enumeration of courts and judges having jurisdiction over juveniles. We noted, however, that Article 931 of our Code of Criminal Procedure authorizes the issuance of warrants by justices of the peace. The question is, was defendant's act of issuing a warrant for Edward Conques' arrest an act so far beyond his general warrant authority as to make him liable for resultant damages? In our opinion, it was not.
We believe the definitive case on an inferior magistrate's liability for damages resulting from acts exceeding his jurisdiction is Berry v. Bass, 157 La. 81, 102 So. 76 (1924). In that case, the sheriff and mayor were sued for false arrest and false imprisonment. The court disposed of the false arrest charge by holding that there simply was no arrest. The court then held that the magistrate-mayor had exceeded his jurisdiction by imprisoning plaintiff instead of giving him the right to pay a fine. The court explained:
"But in one sense the mayor exceeded his jurisdiction; that is to say, he imposed a penalty unauthorized by the ordinance, and therefore in excess of his powers. But it is none the less true that in imposing that sentence he was acting judicially and without malice."
An exhaustive discussion of previous jurisprudence on the point of liability of judges and justices of the peace for acts in excess of their jurisdiction followed. Justice St. Paul, writing for the Berry court, summarized prior jurisprudence this way: "In all of the foregoing (cases) it will be observed that our court has laid no special stress upon any distinction between inferior magistrates and judges of superior jurisdiction. . .; but the cause of action (against the judges) has been laid principally upon malice and corruption. It is true it was twice laid on want of jurisdiction, Bore v. Bush, 6 Mart.(N.S.) 1, and Lafon v. Dufroque, et al., 9 La.Ann. 350; but in Buque v. Watkins, 1 La. 131, the court (Porter, J.) was not prepared to say that the mere imposition (in good faith) of a penalty beyond that provided for by law was such acting out of the jurisdiction of the court as to authorize the infliction of damages. ..."
According to the Berry court, the trend was to hold inferior magistrates, including justices of the peace, to the same accountability in the exercise of their functions as the judges of superior courts. In the opinion, malice is recognized as an element of an action against the magistrate who has exceeded his jurisdiction by imprisoning a defendant. The court explained:
"Where they (i. e., judges) have exercised their function in good faith, without malice and corruption, they should not be held liable for errors of judgment, even in respect to the extent of their jurisdiction, or of their powers under the laws which they are called upon to enforce."
Plaintiffs do not even allege in their petition that defendant acted maliciously or in bad faith in exceeding his jurisdiction. The trial judge states in his written narrative that defendant was in good faith and was free of malice or corruption. Therefore, according to the rule of Berry, defendant is immune from liability.
Plaintiff would distinguish Berry from the instant case on the grounds that it does not deal with a false arrest but instead with a false imprisonment. The rule of law of Berry is a general one, which applies to both arrests and imprisonments. In fact, the rule appears to be one of general application to all cases where judges in good faith and without malice exceed their jurisdiction. The Berry opinion recognizes that the determination of jurisdiction is a judicial duty, and that an honest good faith error in such a determination is within the rule of immunity of judges from damages resulting from acts performed in their judicial capacity.
*631 We conclude, therefore, that judicial immunity will protect defendant from his honest error of judgment in this case.
We feel that this is an appropriate occasion to recall the purpose of judicial immunity. Prosser justifies the rules' existence with this explanation:
"Even though a cynic might be forgiven for pointing out just who made this rule, the reason is of course not a desire to protect the corrupt, malicious, misbehaving official, but rather the necessity of preserving an independent judiciary who will not be deterred by the fear of vexatious suits and personal liability, together with the manifest unfairness of placing any man in a position where his judgment is required, and at the same time, holding him responsible according to the judgment of others. Prosser, Law of Torts, 4th Ed. 1971, 1987-88."
The United States Supreme Court echoed the same sentiment in Pierson v. Ray, 387 U.S. 457, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).
The only issue remaining is disposition of defendant's demand for damages for frivolous appeal. Article 2164 of the Code of Civil Procedure authorizes such a claim, but its provisions are penal in nature and must be strictly construed. Appeals are favored, and damages for frivolous appeal are allowed only where the appeal was taken solely for purposes of delay or where counsel did not seriously believe in the legal arguments he was advancing. Guidry v. Carmouche, 320 So.2d 267 (La.App. 3rd Cir. 1973).
This case presents a substantial legal question on the issue of judicial immunity as it applies to justices of the peace. The appeal is not frivolous. Therefore, we reject plaintiffs' demand for damages for frivolous appeal.
For the reasons assigned, the judgment of the district court is affirmed. All costs of this appeal are to be paid by plaintiffsappellants.
AFFIRMED.