WILSON, APPELLANT, *v.* NEU ET AL., APPELLEES.

[Cite as Wilson *v.* Neu (1984), 12 Ohio St. 3d 102.]

(No. 83-1459—Decided July 18, 1984.)

*Messrs. Nichols, Speidel & Nichols* and *Mr. Thomas H. Flessa,* for appellant.

*Mr. Thomas F. Grennan,* for appellee Neu.

*Messrs. McConn & Cutrell* and *Mr. Jay D. Cutrell,* for appellee village of Hamersville.

HOLMES, J. Two issues are presented by this appeal for review. One, does a mayor enjoy judicial immunity from civil liability when he exceeds his authority in sentencing an individual to be incarcerated for a minor misdemeanor violation? And, two, is a municipality liable for such actions taken by the mayor?

A substantial majority of jurisdictions recognize the rule that where a judge possesses jurisdiction over the controversy he is not civilly liable for acts done in the exercise of his judicial function.[1] The doctrine of judicial immunity originated in the English common law and clearly rests upon public policy considerations. The purpose of the doctrine is to preserve the integrity and independence of the judiciary and to insure that judges will act upon their convictions free from the apprehensions of possible consequences.

The first reported case in this state to discuss judicial immunity was *Truesdell* v. *Combs* (1877), 33 Ohio St. 186, wherein a magistrate was held liable when he acted without jurisdiction over the person or subject matter of the lawsuit. The court set forth the general principle that a justice of the peace, while acting within his scope of authority, is not liable for the erroneous exercise of a judicial function. *Id.* at paragraph one of the syllabus. However, it noted that a judicial officer, who is clothed with only special jurisdiction, must act wholly within such jurisdiction or be subject to civil liability to the extent that he transcends the limits of his jurisdictional authority. See, also, *Truman* v. *Walton* (1899), 59 Ohio St. 517.

A more thorough analysis of the judicial immunity doctrine was expressed in *Stahl* v. *Currey* (1939), 135 Ohio St. 253 [14 O.O. 112]. The court

---

[1] See *Stump* v. *Sparkman* (1978), 435 U.S. 349; *Pierson* v. *Ray* (1967), 386 U.S. 547; *Francis* v. *Crafts* (C.A. 1, 1953), 203 F. 2d 809, certiorari denied (1953), 346 U.S. 835; *Yaselli* v. *Goff* (C.A. 2, 1926), 12 F. 2d 396, affirmed (1927), 275 U.S. 503; *Perez* v. *Borchers* (C.A. 5, 1978), 567 F. 2d 285; *Thompson* v. *Heither* (C.A. 6, 1956), 235 F. 2d 176; *Wiggins* v. *Hess* (C.A. 8, 1976), 531 F. 2d 920; *Rankin* v. *Howard* (C.A. 9, 1980), 633 F. 2d 844; *Taylor* v. *Nichols* (C.A. 10, 1977), 558 F. 2d 561; *McKinley* v. *Simmons* (1963), 274 Ala. 355, 148 So. 2d 648; *Davis* v. *Burris* (1938), 51 Ariz. 220, 75 P. 2d 689; *Tagliavia* v. *Cty. of Los Angeles* (1980), 112 Cal. App. 3d 759, 169 Cal. Rptr. 467; *In re McGarry* (1942), 380 Ill. 359, 44 N.E. 2d 7; *Osbekoff* v. *Mallory* (Iowa 1971), 188 N.W. 2d 294; *Conques* v. *Hardy* (La. App. 1976), 337 So. 2d 627; *DeLoach* v. *Tracy* (1967), 352 Mass. 135, 223 N.E. 2d 918; *Mundy* v. *McDonald* (1921), 216 Mich. 444, 185 N.W. 877; *Gammel* v. *Ernst & Ernst* (1955), 245 Minn. 249, 72 N.W. 2d 364; *State, ex rel. Little,* v. *United States Fidelity & Guar. Co.* (1953), 217 Miss. 576, 64 So. 2d 697; *Pogue* v. *Swink* (1955), 365 Mo. 503, 284 S.W. 2d 868; *Grant* v. *Williams* (1917), 54 Mont. 246, 169 P. 286; *Gordon* v. *District Court* (1913), 36 Nev. 1, 131 P. 134; *Kittler* v. *Kelsch* (1927), 56 N.D. 227, 216 N.W. 898; *Vickrey* v. *Dunivan* (1955), 59 N.M. 90, 279 P. 2d 853; *Moore* v. *Caponera* (1979), 99 Misc. 2d 953, 417 N.Y. Supp. 2d 603; *Wright* v. *White* (1941), 166 Ore. 136, 110 P. 2d 948; *Berry* v. *Smith* (1927), 148 Va. 424, 139 S.E. 252; *Bromund* v. *Holt* (1964), 24 Wis. 2d 336, 129 N.W. 2d 149.

specifically addressed the dichotomy between a judicial officer acting with a total lack of jurisdiction and a judicial act which exceeded the court's jurisdiction. Chief Justice Weygandt, writing for the majority, noted that liability only attaches in the former instance. In other words, a judge will not lose his immunity because of an error in judgment even though the resultant act is in excess of the court's jurisdiction. Excess of jurisdiction as opposed to acting in the absence of jurisdiction means that the act, although within the power of the judge, is not authorized by law and is therefore voidable. See *Wade* v. *Bethesda Hospital* (S.D. Ohio 1971), 337 F. Supp. 671.

Moreover, the court held in *Stahl* that if a judicial officer has jurisdiction of the person and subject matter relating to a criminal offense, he is exempt from civil liability for false imprisonment even though he acts beyond his sentencing authority. See, also, *Voll* v. *Steele* (1943), 141 Ohio St. 293 [25 O.O. 424].

Based on prior case law, it is clear that the basis for liability hinges on the distinction between an act taken in the absence of jurisdiction and an act in excess of jurisdiction. For civil liability to exist, a judge must lack jurisdiction, either personal or subject matter, and take some action in a judicial capacity which violates the rights of a party to the lawsuit. If, however, a judge has the requisite jurisdiction over the controversy, he is immune from liability even though his acts are voidable as taken in excess of jurisdiction.[2]

In the case *sub judice,* appellee Neu had personal as well as subject matter jurisdiction. On June 10, 1981, appellant appeared before the court and entered a plea of not guilty. In addition, R.C. 1905.01 provides the mayor of a municipal corporation with subject matter jurisdiction to determine a prosecution for the violation of a city traffic ordinance. Therefore, we hold that appellee Neu had jurisdiction over the case in controversy and is immune from civil liability for the unlawful incarceration of appellant.

Our determination of the second issue is controlled by the recent decision of *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31. In paragraph two of the syllabus, a majority of this court stated in pertinent part:

"Under this decision abolishing municipal immunity, no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function * * *."

Clearly, the operation of a mayor's court to enforce the laws of this state

---

[2] We also recognize the United States Supreme Court's recent pronouncement in *Pulliam* v. *Allen* (1984), 80 L.Ed. 2d 565, which involved a civil rights claim brought against a state magistrate who imposed bail in connection with offenses that carried only monetary fines as punishment and then committed the offenders to jail when they were unable to post the requisite bonds. The court upheld the traditional concept of judicial immunity as to those actions seeking monetary damages. However, the court held that the immunity was not a bar to prospective injunctive relief in a federal court against a state judicial officer who is found to be violating civil rights. In addition, the court awarded attorney fees under Section 1988, Title 42, U.S. Code, due to the clear intent of Congress to permit such fees in cases in which prospective relief was properly awarded against defendants who are immune from monetary awards.

and its political subdivisions is an exercise of a judicial function, and the city is thereby immune from liability for any action taken by the mayor in his judicial capacity.

Accordingly, we affirm the judgment of the court of appeals on the issues presented herein.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.