PENN, APPELLANT, *v.* MCMONAGLE, GUARDIAN AD LITEM, APPELLEE.

(No. H-89-48—Decided October 12, 1990.)

*Patrick M. Maniscalco,* for appellant.

*Philip J. Weaver, Jr.,* for appellee.

ABOOD, J. This is an appeal from an order of the Huron County Common Pleas Court, which granted summary judgment to defendant-appellee, Christine McMonagle, on plaintiff-appellant's complaint for damages for appellee's alleged negligence in the performance of her duties as a court-appointed guardian ad litem for his children during divorce proceedings in the Domestic Relations Division of the Cuyahoga County Common Pleas Court.

Appellant's sole assignment of error is:

"Whether the trial court erred in granting defendant's motion for summary judgment based on a theory of absolute immunity."

The facts giving rise to this appeal are as follows. Appellant, Laurence Penn, and Catherine Penn were married on August 27, 1977, and two children, Pandora Penn and Alexander Penn, were born to the marriage. On December 27, 1984, Catherine Penn filed for divorce in Cuyahoga County, Ohio. Appellant immediately moved for the appointment of a guardian ad litem for the children and on January 7, 1985, the motion was granted and appellee was appointed.

Prior to the date of the divorce

trial, the court requested and received a report from appellee detailing her findings and recommendations concerning the children. The report, compiled over a two-year period, between the date of appellee's appointment and May 1987, contained the following information. Catherine retained custody of the children while the divorce action was pending and, during January 1985, took the children with her to Great Britain, where she enrolled them in school, obtained legal counsel, and instituted another action for divorce from appellant. Pursuant to the divorce action in Great Britain, a type of guardian ad litem called a welfare officer was assigned to oversee the best interests of the children. Appellant also obtained counsel in Great Britain and visited the children on several occasions under the supervision of the welfare officer. Prior to a hearing scheduled in July 1985, appellant apparently acquired duplicate passports for the children and removed the children back to the United States, where he lived with them in the marital dwelling. Appellant deterred Catherine from returning to the United States by telling her there was a warrant out for her arrest and that she was to be prosecuted for removing money from a corporate account. Upon discovering that the information from her husband was a ruse, she was able to borrow money from her mother and return to the United States where she again obtained legal counsel. On March 14, 1986, appellee requested that possession of the children be returned to Catherine and recommended that a visitation schedule be arranged. The court ordered that appellant return the children, along with the family car, to Catherine on March 15, 1986. Appellant failed to appear on that date and police were dispatched to the marital dwelling to help secure the transfer. Upon arrival at the house, appellant refused to relinquish possession of the children or the car and claimed that he was not required to do so without a certified court order, whereupon the presiding judge was contacted at home and offered to deliver the order in person if necessary. When informed of this possibility, appellant turned over the children but not the car. At that time Catherine requested that the court rule on the motion for temporary alimony which she had filed in November of 1984. Prior to the hearing which was scheduled for March, 26, 1986, appellant filed an affidavit of prejudice and the case was delayed for another two months while that action was before the Ohio Supreme Court which ultimately found no prejudice. During the summer of 1986, the children lived primarily with their father in Willard, Ohio, pursuant to the visitation arrangement. When it came time for the children to be returned to their mother for enrollment in the Cleveland Heights School System, appellant failed to comply and informed Catherine by phone that he did not intend to return the children. Appellee, as guardian ad litem, made inquiry as to the children's whereabouts and discovered that they had been enrolled in a school system in Willard, Ohio. Appellee questioned the school principal as to under whose authority the children had been enrolled and the principal produced a court order given to him by appellant that appeared to give appellant the right to enroll the children in school. This order was actually only two of the three pages of the order issued in March with the third page, which outlined when the children were to be returned to their mother, missing. Appellee notified Catherine's counsel of the situation and arrangements were made for the sheriff's department to go out, retrieve the children and return them to their mother. Shortly after the return

of the children to their mother, appellant arrived at the Cuyahoga County Department of Human Services with a note that he claimed had been written by Pandora which stated that her mother was trying to kill her. The Department of Human Services interviewed Pandora, who denied the allegations made in the letter, and found that the report was without merit and took no further action in the matter.

Appellee's report concluded with the following findings and recommendations:

"1. The history of this case reveals that Mrs. Penn is more capable of putting aside her own personal needs in favor of the needs of the children. * * * [Mr. Penn]'s activities during this divorce have been contrary to the best interests of the children and in furtherance apparently only of his own interests. * * *

"In conclusion, the guardian feels that the best interests of the children would be most accurately fulfilled in a grant of custody to the plaintiff mother."

Appellee expressed reservations about making a recommendation on the issue of visitation, but offered her opinion that "at this point in time at least Mr. Penn be given the benefit of the doubt and that visitation * * * continue * * * as presently outlined." Appellee further recommended that the extended summer visitation be replaced by a continuance of the regular visitation schedule.

At the divorce trial, appellee testified in conformance with her report, touching upon her efforts to locate the children in Willard, Ohio. On September 10, 1987, the trial court filed its judgment entry in which it found that appellant was guilty of gross neglect of duty and extreme cruelty, granted Catherine a divorce and, based at least partially on the guardian ad litem's report, awarded custody of the children to Catherine.

On June 8, 1988, appellant filed his complaint in which he alleged that appellee had performed negligently in her role as court-appointed guardian ad litem and had falsely testified concerning her contact with the school in Willard, Ohio. On June 22, 1989, appellee filed her motion for summary judgment in which she asserted that there are no genuine issues of material fact and that while acting as a court-appointed guardian ad litem she is immune from suit for actions taken in connection with her duties. On September 5, 1989, the trial court summarily granted appellee's motion for summary judgment and on September 29, 1989, appellant filed a timely notice of appeal of that decision.

In his sole assignment of error, appellant asserts that appellee, in her position as guardian ad litem, should not be afforded absolute immunity but only a qualified immunity (also known as good faith immunity). Appellee responds that the activities of a guardian ad litem, as a duly appointed officer of the court, are quasi-judicial in nature and therefore deserving of the protection afforded by full immunity.

The history of the absolute immunity of the judiciary is long and well-settled. See *Wilson* v. *Neu* (1984), 12 Ohio St. 3d 102, 12 OBR 147, 465 N.E.2d 854; *Truesdell* v. *Combs* (1877), 33 Ohio St. 186. The rationale consistently given for affording the judiciary absolute immunity for acts done in their judicial capacity is "* * * to preserve the integrity and independence of the judiciary and to ensure that judges will act upon their convictions free from the apprehensions of possible consequences." *Wilson, supra,* at 103, 12 OBR at 148, 465 N.E. 2d at 856. The question in this case is whether a guardian ad litem should be shielded by the um-

brella of absolute immunity, as it is afforded to members of the judiciary, due to their quasi-judicial function within the system.

Ohio courts have had little opportunity to address this issue since most cases involving the potential liability of a guardian ad litem have been civil rights cases brought in federal court under Section 1983, Title 42, U.S. Code. The federal courts have thoroughly and fairly dealt with the issue, however, and this court sees no reason to go beyond the analysis of and conclusions reached in those cases.

In *Kurzawa* v. *Mueller* (C.A. 6, 1984), 732 F. 2d 1456, the Sixth Circuit Court of Appeals considered a case similar to this case in which a court-appointed guardian ad litem faced allegations of negligence. The federal appeals court stated at 1458 that:

"* * * [A] guardian ad litem * * * must act in the best interests of the child he represents. Such a position clearly places him squarely within the judicial process to accomplish that goal. A guardian ad litem must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings."

While appellant relies heavily on *Willitzer* v. *McCloud* (1983), 6 Ohio St. 3d 447, 6 OBR 489, 453 N.E. 2d 693, *Willitzer* stands for the proposition that non-court-appointed physicians are to be granted no more than qualified immunity, in most cases, for their work outside the court. In this case, however, it is undisputed that appellee was a court-appointed functionary whose work, as a guardian ad litem, was intimately related to that of the court and who was under a mandate to protect the children's interests in a judicial setting.

Upon consideration of the foregoing, this court agrees with the reasoning of the *Kurzawa* court and finds that appellee is entitled to absolute immunity from actions arising out of the performance of her duties as guardian ad litem.

This court finds further that there exists no genuine issue as to any material fact and reasonable minds could come to but one conclusion and that conclusion is that appellee is entitled to judgment as a matter of law. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. Accordingly, appellant's single assignment of error is found not well-taken.

On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Huron County Common Pleas Court is affirmed.

*Judgment affirmed.*

HANDWORK, P.J., and MELVIN L. RESNICK, J., concur.