OPINION
Defendant-appellant, Gena Lane, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, designating plaintiff-appellee, Michael Ottariano, the residential parent of the parties' minor child.
The parties have one child together, Michael Dillon Ottariano, who was born on June 20, 1997. Approximately five months after his birth, the couple ended their relationship, and appellant began seeing David Lane. At first, Ottariano was allowed regular visits with his son, including time each Wednesday and every other weekend. However, with Lane's involvement, the relationship between appellant and Ottariano became increasingly contentious. In November 1997, appellant began limiting Ottariano's visits to only weekends. On the occasions that Lane would have contact with Ottariano, Lane would be hostile and verbally threaten Ottariano.
Appellant married Lane in January 1998, while he was under indictment on federal drug trafficking charges. Lane was subsequently convicted and is currently incarcerated. Appellant expects to resume living with Lane once he is released from prison and sees no harm to her child in this.
In February 1998, due to the inconsistency of his visitation, Ottariano filed a motion with the trial court requesting an allocation of parental rights and responsibilities. Ottariano asked that he be named the child's residential parent and legal custodian. Shortly thereafter, appellant terminated Ottariano's visits with the child because she was angry about the pending custody proceeding. Ottariano did not see the child again until the trial court entered a temporary visitation order in July 1998. The order maintained appellant as the custodial parent and granted Ottariano visitation rights on alternating weekends and Wednesdays. Ottariano was ordered to pay guideline child support.
Once the temporary order was in place, Ottariano still had difficulty visiting his son. In mid-August, appellant informed Ottariano that he would have to pick up the child from Lane's mother in order to exercise his Wednesday visitation. Because of the contentious relationship between Lane and himself, Ottariano did not agree to the change. Thereafter, appellant failed to bring the child to the court-designated drop-off point. In mid-September, appellant stopped bringing the child to the drop-off point for Ottariano's weekend visitation as well, purportedly because her work schedule had changed. Ottariano filed a contempt motion against appellant for her failure to abide by the visitation order. As a result, the trial court ordered that the visitation schedule be strictly enforced.
Ottariano continued to have difficulty exercising his visitation, and consequently filed a motion requesting temporary custody. The trial court granted the motion, and Ottariano was given temporary custody of the child on December 10, 1998. Once he received custody, there were no further problems with visitation.
A guardian ad litem was appointed to represent the child's best interests. After completing interviews with both parents, with the child's maternal and paternal grandmothers, and attending multiple hearings, the guardian presented the trial court with a written report. In the report, the guardian stated that both parties are capable parents, and that the child should not be denied the companionship of either parent. However, because of appellant's interference with Ottariano's visitation, and her association with a convicted drug offender, the guardian concluded that it was in the child's best interest that Ottariano be granted custody and that appellant be given visitation rights. The guardian felt that Ottariano had exercised careful judgment in making parenting decisions while appellant had failed to act consistently in the child's best interest.
Both parties testified extensively at the final custody hearing, which spanned four days. The trial court also heard testimony from appellant's mother and mother-in-law. At the conclusion of the proceeding, the trial court granted custody of the child to Ottariano and continued appellant's visitation. Appellant appeals, raising two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT CONSIDERED AND INCORPORATED THE REPORT OF THE GUARDIAN AD LITEM.
As an initial matter, we note that the trial court did not "incorporate" the guardian's report into its decision as suggested by appellant in this assignment of error. The trial court specifically stated that its decision was made "after reviewing the testimony, exhibits, and GAL Report[.]" There is no indication that the trial court "incorporated" the report into its decision or relied on the report to such an extent that it committed reversible error. See Bawidamann v. Bawidamann (1989),63 Ohio App.3d 691, 699-700. The report was appropriately considered by the trial court in making the best interest determination, as permitted under R.C. 3109.04(F)(1). Accordingly, we find this assertion to be without merit.
Appellant first contends that the report of the guardian ad litem is flawed because the guardian ad litem did not attend the final two days of the custody hearing. While it is true that the guardian did not appear for the final two days of the custody proceeding, he had appeared for at least ten previous hearings. His report was based on meetings with the child, interviews conducted with both parties, and discussions with both the maternal and paternal grandmothers. It is apparent that throughout the two years the guardian was involved in this matter he had numerous contacts with both parties and their counsel, and was reasonably well apprised of facts surrounding the custody dispute. As well, it is within the trial court's discretion to give the report due weight after consideration of all the evidence. See, e.g., C.E. Morris Co. v. FoleyConstruction Co (1978), 54 Ohio St.2d 279.
Appellant next contends that the report of the guardian ad litem is flawed because it does not "totally account for the child's best interest." Appellant takes issue with the guardian's ultimate conclusion that it is in the child's best interest that Ottariano be designated his residential parent and legal custodian.
It is well-established that the role of a guardian ad litem is "to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest." In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, 232; Penn v. McMonagle (1990),60 Ohio App.3d 149, 152. Contrary to appellant's apparent assertion, the guardian ad litem is not a fact-finder or an impartial party to the proceeding, but rather is an advocate for the ward's best interest. The guardian's report is in the form of an argument, advocating the ward's best interest to the trial court.
The role of the court is to act as the fact-finder and to exercise independent judgment in determining the best interests of the child. See, e.g., R.C. 3109.04. The guardian's report is merely an aid to the trial court when making this determination. The guardian's report was submitted to the trial court, and we again note that there is no indication that any undue reliance was placed on the report by the trial court. The trial court clearly stated that it had reviewed and considered all of the evidence presented.
Appellant also contends that the trial court should not have considered the report because the guardian ad litem was not available for questioning at trial. Appellant did not subpoena the guardian, nor does she provide legal authority for the proposition that a guardian ad litem
must voluntarily present testimony. Had appellant desired to question the guardian ad litem under oath, it was incumbent upon her to subpoena him to testify.
Upon consideration of the foregoing, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT GRANTED LEGAL CUSTODY OF THE CHILD TO APPELLEE.
In her second assignment of error, appellant contends that the trial court erred by granting "custody of a child to a father when there is no evidence that the mother's home is in any way detrimental to the child and the best interests of the child are for him to remain with his mother."
Issues involving child custody and visitation lie within the very broad discretion of the trial court. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,24; Trickey v. Trickey (1952), 158 Ohio St. 9, 14. The knowledge obtained through contact with and observation of the parties cannot be conveyed to a reviewing court through the printed word. Id. Because the trial court is vested with broad discretion in child custody matters, a custody decision is subject to reversal only upon a showing of an abuse of discretion. Pater v. Pater (1992), 63 Ohio St.3d 393, 396. More than an error of law or judgment, an abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
When making an initial allocation of parental rights and responsibilities, the trial court is required to apply a best interest of the child standard. R.C. 3109.04(B)(1). Both parents "stand upon an equality as to the parental rights and responsibilities for the care of their children and the place of residence and legal custodian of the children." R.C. 3109.03; Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,23. R.C. 3109.03 recognizes no distinction between the rights of a father and those of a mother to the custody of children.
When determining the child's best interest, the court is directed by statute to consider all relevant factors, including the child's relationship with his parents and siblings, his adjustment to his home, school, and community, whether either parent has willfully denied the other parent the right to visitation, and which parent will most likely facilitate visitation. R.C. 3109.04(F)(1). It is apparent from the findings of fact prepared by the trial court that the factors listed in the statute were carefully considered.
Appellant knowingly married a convicted drug trafficker, Lane, and testified that she would "eagerly" welcome him into her home once he is released from prison. Before going to prison, Lane hindered Ottariano's exercise of his visitation by acting in a hostile and combative manner toward him. Appellant failed to comply with the trial court's visitation order, completely denying Ottariano visitation with the child for a period of time. Although she offered explanations for some of the missed visits, the trial court, faced with conflicting testimony, acted within its discretion by resolving the conflict. Pasqualone v. Pasqualone
(1980), 63 Ohio St.2d 96, 105-106. In contrast, the trial court noted that Ottariano presented the "picture of stability," complying with court-ordered visitation and maintaining steady employment and housing.
The trial court's finding that it is in the child's best interest that Ottariano be named his custodial parent is supported by ample competent and credible evidence. The second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.