RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0285P (6th Cir.)
File Name: 01a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STEPHEN M. STERN and
CHRISTOPHER D. BECKER,
          *Plaintiffs-Appellants,*

          *v.*

JOHN J. MASCIO,
          *Defendant-Appellee.*

No. 00-3664

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00260—George C. Smith, District Judge.

Argued: July 31, 2001

Decided and Filed: August 24, 2001

Before: BOGGS, DAUGHTREY, and FARRIS, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Christopher D. Becker, Cortland, Ohio, for
Appellants. Sarah D. Morrison, CHESTER, WILLCOX &

_____

[*]The Honorable Jerome Farris, Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

SAXBE LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** Christopher D. Becker, Cortland, Ohio, Stephen M. Stern, Leesburg, Florida, for Appellants.    Richard A. Frye, CHESTER, WILLCOX & SAXBE LLP, Columbus, Ohio, Kirk A. Lindsey, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

————————

## OPINION

————————

BOGGS, Circuit Judge. Plaintiffs appeal the district court's holding that defendant, a sitting judge of an Ohio trial court, enjoyed judicial immunity from a suit for money damages. Plaintiffs allege that the judge ordered them arrested and brought before his court and then attempted to fine both and imprison one for contempt, in violation of their federal constitutional rights and rights under state law. The district court held that the defendant acted in excess of his authority but not in the clear absence of all jurisdiction. We affirm the district court.

### I

This case comes to us as the latest episode in a long-running public controversy between two prominent civic figures in the eastern Ohio city of Steubenville, a feud the Chief Justice of the Ohio Supreme Court had apparently resolved three years ago. In the early 1980s, plaintiff Stephen M. Stern was elected County Attorney for Jefferson County, Ohio, which comprises the Steubenville area. He promptly initiated a campaign to stamp out illegal gambling in the city. At the same time, defendant John J. Mascio served as director of the Steubenville city law department, in which capacity he opined that Ohio gambling laws did not apply to certain games (apparently video poker games) then commonly played in Steubenville taverns, lounges, private clubs, and public houses. According to Stern, at the time Mascio issued his formal opinion, one of Mascio's partners in a liquor business was distributing the video games in question. Even as Mascio

was] entitled to the requested extraordinary relief . . . ." *Id.* at 254. For this reason, also, issue preclusion does not apply.

The Ohio Supreme Court's holding that Judge Mascio "patently and unambiguously lacked jurisdiction" relates to a matter distinct from the "complete absence of all jurisdiction" at issue when a party raises the defense of absolute judicial immunity.    Judge Mascio's court had subject-matter jurisdiction over the *Clancey's Bar* case. Although Ohio law deprived Judge Mascio of jurisdiction to act in the case at the time he conducted the contempt hearing and sentenced plaintiffs, his actions were not taken in the complete absence of all jurisdiction but merely exceeded his authority, a problem fully corrected by Ohio's appellate courts.[5]

### III

The judgment of the district court is **AFFIRMED.**

————————

[5]Plaintiffs' contention, forcefully pressed at oral argument, that Judge Mascio surely acted "in the complete absence of all jurisdiction" when he held them in contempt for filing a document in another court, as they had a right to do under state law, is attractive but flawed. This argument, like plaintiffs' others, ignores the rule that Mascio enjoys judicial immunity to act as long as his court has subject-matter jurisdiction over the case in which he acted or purported to act. Mascio's reason for issuing the contempt citation may have been quite wrong, or even outrageous, but even such a circumstance does not change the reality that Judge Mascio's court had subject-matter jurisdiction over *Clancey's Bar*.

Supreme Court's opinion confirms that Judge Mascio's court had subject-matter jurisdiction over *Clancey's Bar* even though "Judge Mascio patently and unambiguously lack[ed] jurisdiction to proceed in the civil nuisance case" because he had been disqualified from it by two separate acts, one his own. *Stern v. Mascio*, 691 N.E.2d at 255. The court recited, in the course of its explanation of the state-law standard for writs of prohibition, that the writ will issue when a judge who has subject-matter jurisdiction nevertheless acts patently and unambiguously without jurisdiction, for some reason other than his court's subject-matter jurisdiction over the cause.

The court thus impliedly recognized the subject-matter jurisdiction of the Jefferson County Court of Common Pleas and proceeded to analyze whether Judge Mascio, as a particular judge of that court, lacked jurisdiction for some other reason. Indeed, the opinion indicated that Judge Mascio might again have jurisdiction over the case once the chief justice ruled on the Affidavit of Disqualification. *See id.* at 255. Thus, the issue actually litigated before the Supreme Court was Judge Mascio's jurisdiction over a particular case, not whether he or his court had subject-matter jurisdiction over the type of action presented by the *Clancey's Bar* case. Since the matter at issue here was not actually litigated in the prior proceeding, issue preclusion does not apply.

The fourth element of issue preclusion likewise does not exist because, assuming the issue was before the Ohio Supreme Court, Mascio did not have "a full and fair opportunity to litigate the issue in the prior proceeding." As the court's opinion itself suggests and the record before us makes clear, the Ohio Supreme Court granted Stern's request for emergency relief and issued the writ of prohibition *ex parte*. Mascio was not given an opportunity to litigate the issue of his jurisdiction in the prior proceeding because, to the Ohio Supreme Court, "it appear[ed] beyond doubt that [Stern

---

panel of the same court with jurisdiction to adjudicate capital crimes charged in the same indictment).

made vociferous public statements challenging the legal basis for certain of Stern's actions in his anti-gambling crusade, Stern and his assistants proceeded with high-profile raids of and public-nuisance actions against several well-known bars and private clubs. Over the ensuing two decades, Stern's campaign resulted in the termination of gambling activity in no less than 29 locations, with some businesses shut down entirely.

Following some of the early raids, a grand jury indicted various individuals on gambling and related charges. The prosecutions came to a halt when Mascio, who had become a judge of the Common Pleas Court for the judicial district that includes Steubenville, ruled the gambling statute unconstitutional. While Stern pursued an ultimately successful appeal to the Ohio Supreme Court, *see Ohio v. McDonald*, 509 N.E.2d 57 (Ohio 1987), the prosecutor's office, the Ohio Department of Liquor Control, and other agencies continued to monitor local bars for violations of state gambling laws. Many of the prosecutions that were stalled by Mascio's ruling were dropped after the remand from the Ohio Supreme Court, apparently because Stern had decided that marshaling the necessary proof against the defendants had become impractical.

In the 1990s, Stern became concerned that liquor establishments had moved away from gambling and toward drug trafficking. In 1995, he again used Ohio's law of civil nuisances to shut down certain bars, this time those frequented by drug dealers, prosecuting many of the patrons under state drug laws. Some bar patrons who were convicted in his first drug-related sweep began frequenting Clancey's Bar in Wintersville, Ohio. Surveillance of these individuals led prosecutors to conclude that Clancey's Bar was engaged in illegal gambling by operating, for profit, floating craps games, football pools, parlay sheets, and other games of chance. Stern believed that this activity violated Ohio's gambling and liquor control laws, so he filed a civil nuisance action designed to shut down Clancey's Bar in early 1998. *State ex rel. Stern v. Clancey's Bar* was assigned to Judge

Mascio. Meanwhile, in a different division of the Jefferson County Common Pleas Court, several defendants named in the civil nuisance action were charged with certain related criminal offenses. Two of these defendants retained attorney John Mascio, son of Judge Mascio, as counsel for their defense of the criminal charges. Attorney Mascio did not enter an appearance in *Clancey's Bar*, but, according to plaintiffs, he did physically appear in his father's courtroom during proceedings in the *Clancey's Bar* case.

When Judge Mascio learned of his son's involvement in the related criminal prosecutions, he *sua sponte* scheduled a hearing for February 12, 1998, to address whether he should continue to preside over the civil action. At the hearing, Mascio stated that he would send out draft remittals of disqualification, which the parties could sign, thus allowing him to remain on the case. Judge Mascio told counsel: "But I would like if there's authority either of you have, can give me some case citation with respect to whether any disqualification is a total disqualification. . . . You submit those to me by Wednesday and I'll set this for Friday the 20th. This matter is continued until the 20th at 9:00." Later the same day, Judge Mascio filed a journal entry and a disclosure in *Clancey's Bar*. Judge Mascio claims that he intended this entry simply to memorialize the events in court. The entry essentially accomplished this, in addition to ordering counsel to submit points of law on disqualification and whether the matter should be stayed pending the criminal case in order to protect the criminal defendants' privilege against compulsory self-incrimination. But the judge also signed and entered a "disclosure of disqualification," which stated, "Pursuant to the terms of Canon 3(C)(1) and/or Canon 3(D), Judge John J. Mascio hereby discloses his disqualification from participating the in the [sic] proceedings of the above styled cause [*Clancey's Bar*] for the reason that his son, John J. Mascio, is an attorney for one of the Defendants listed in the Complaint," and therefore the judge's impartiality might be reasonably questioned. Plaintiffs claim that the disclosure effectively disqualified Judge Mascio from the case by its own terms, thereby depriving him of jurisdiction to act any

obviously does not involve the same claim, cause of action, or defenses, despite plaintiffs' conclusory assertion to the contrary.

As for issue preclusion, that doctrine applies only if "(1) the precise issue raised in the present case [was] raised and actually litigated in the prior proceeding; (2) determination of the issue [was] necessary to the outcome of the prior proceeding; (3) the prior proceeding . . . resulted in a final judgment on the merits; and (4) the party against whom [issue preclusion] is sought . . . had a full and fair opportunity to litigate the issue in the prior proceeding." *Smith v. Securities & Exch. Comm'n*, 129 F.3d 356, 362 (6th Cir. 1997) (en banc) (citing *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987)). Neither the first nor the fourth requirement exists here.

The issue in *State ex rel. Stern v. Mascio, Judge* was whether Judge Mascio, as a particular judge, could exercise jurisdiction over a case when he had disqualified himself from hearing the case (he claims he did not intend to do so) and a party in the case had filed an Affidavit of Disqualification in the Supreme Court. Neither of these matters relate to whether he or his court had subject-matter jurisdiction over the *Clancey's Bar* case, in which he purported to act. Ohio courts use the term "jurisdiction" in a variety of contexts related to a judge's authority to act in a case, not all of which depend upon his court's subject-matter jurisdiction.[4] The Ohio

---

[4] *See State v. Swiger*, 708 N.E.2d 1033, 1037 (Ohio Ct. App. 1998) ("Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a case or the particular tribunal that hears the case. . . . [In contrast, jurisdiction of a particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction of the particular case merely renders the judgment voidable."). *See also, e.g., State v. Filiaggi*, 714 N.E.2d 867, 876 (Ohio 1999) (discussing the jurisdiction of the presiding judge of the court of common pleas to adjudicate non-capital charges when the defendant waived trial by jury and vested a three-judge

filing the civil nuisance action. Since Judge Mascio's court had subject-matter jurisdiction over the case, he did not act "in the complete absence of all jurisdiction" for purposes of the judicial immunity determination.

Plaintiffs rely heavily on the opinion of the Ohio Supreme Court in *State ex rel. Stern v. Mascio, Judge.* In addition to claiming that the opinion shows that Judge Mascio acted "in the complete absence of all jurisdiction,"[3] they argue that the state court's opinion should be given preclusive effect in this case. Plaintiffs do not make clear whether they seek application of the claim preclusion or issue preclusion doctrine.

> [C]laim preclusion . . . is the doctrine . . . by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment. It precludes not only relitigating a claim or cause of action previously adjudicated, it also precludes litigating a claim or defense that should have been raised, but was not, in a claim or cause of action previously adjudicated. . . . [I]ssue preclusion . . . precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.

*Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660-61 (6th Cir. 1990) (citations omitted). Because *State ex rel. Stern v. Mascio, Judge* was an original action in the Ohio Supreme Court seeking a writ of prohibition to vacate Judge Mascio's orders and prevent him from acting in the *Clancey's Bar* case, the instant civil rights action

---

[3] Plaintiff's position, that the Ohio Supreme Court's resolution of the jurisdictional matter addressed the same issue as presently before this court, is belied by the circumstance that nowhere in its opinion did the Ohio court cite or consider a single state or federal case on judicial immunity from a suit for civil damages.

further in the matter. But Mascio asserts that this disclosure simply recorded his putting the parties on notice of a potential disqualification problem. Judge Mascio maintains that he intended, as shown by his order to the parties to submit briefing and to appear for further hearings, to retain jurisdiction over the case.[1]

Late in the afternoon of February 12, 1998, Stern filed in the Ohio Supreme Court an "Affidavit of Disqualification" pursuant to OHIO REV. CODE § 2701.03. Section 2701.03, enacted in 1996, altered the procedure for raising judicial disqualification matters before the Supreme Court, so that the filing of an affidavit of disqualification automatically disqualifies the subject judge. *See* OHIO REV. CODE § 2701.03(D)(1) ("[T]he affidavit deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding until the chief justice . . . rules on the affidavit . . . ."). On February 13, 1998, the Supreme Court of Ohio sent Judge Mascio a letter informing him of the affidavit and instructing that no further judicial rulings should be made until the chief justice acted on the affidavit, except as provided in OHIO REV. CODE § 2701.03(D)(2), (3), and (4). Mascio was given ten days to file a written response.

Before the Chief Justice had acted on the affidavit, Judge Mascio learned that Stern and his assistants had subpoenaed Mascio to appear as a witness in the criminal proceeding. Stern planned to resist the criminal defendants' assertions of selective prosecution by having Judge Mascio testify that Stern had proceeded against certain of Mascio's businesses in the 1980s. When Mascio learned of the subpoena, he summoned (under threat of arrest) one of Stern's assistants, plaintiff Christopher D. Becker, to appear in his court. The *ex parte* proceedings in Judge Mascio's chambers took place on

---

[1] As explained more fully below, the Ohio Supreme Court apparently agreed with plaintiffs' view of the disclosure, citing it as one of two reasons that Mascio's jurisdiction over the case ended on February 12, 1998. *See State ex rel. Stern v. Mascio, Judge*, 691 N.E.2d 253, 255 (Ohio 1998).

February 13th.  At the combative meeting, Mascio berated Becker for subpoenaing a sitting judge and maintained that he no longer had an ownership interest in a certain business when Stern proceeded against it in 1984-85.  Becker advised Mascio that the prosecutor's office had filed the Affidavit of Disqualification (Mascio had not yet received the letter from the Supreme Court), which led Mascio to concede that "no further proceedings can be had in this case until that's done.  But I still think . . . that I have the right to determine contempt of court for you and Mr. Stern for what you've done because that's not ruling on the issues of the case, that's ruling on your unwarranted attack on a court of common pleas.  I'm telling you now and the minute [Stern] gets back you're going to be brought to court for that purpose."  The conference ended abruptly, with Judge Mascio telling Becker to save his explanations for the public hearing.

Purportedly acting under the exception in OHIO REV. CODE § 2701.03(D)(3) ("A judge against whom an affidavit of disqualification has been filed under divisions (B) and (C) of this section may determine a matter that does not affect a substantive right of any of the parties."), Judge Mascio conducted contempt proceedings in *Clancey's Bar* on February 18, 1998.  *But see Stern v. Mascio*, 691 N.E.2d at 255 (ruling that the exception did not apply to civil contempt proceedings ancillary to a case in which an affidavit of disqualification has been filed).  After the proceedings in open court concluded, Judge Mascio filed another journal entry in *Clancey's Bar*, which reads, in its entirety:

On this 18th day of February, 1998, Prosecutor [sic] Attorney Stephen M. Stern and Assistant Prosecuting Attorney Christopher D. Becker were brought before the Court to answer the charge of direct contempt of Court as filed by this Court.

The Court finds that the "Memorandum" filed by the Office of the Prosecuting Attorney and signed by Contemnors on February 6, 1998 as well as the Affidavit for Disqualification filed with the Ohio Supreme Court on February 12, 1998 to constitute two separate incidents

when the want of jurisdiction is known to the judge, no excuse is permissible.  But where jurisdiction over the subject-matter is invested by law in the judge, *or in the court which he holds*, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.  . . .  Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised.

*Bradley*, 80 U.S. at 351-52 (emphasis added).

This court has read *Bradley* as establishing that, "[o]nly in the absence of *subject matter jurisdiction* are judicial actors devoid of the shield of immunity.  When, however, a court with subject matter jurisdiction acts where [for example] personal jurisdiction is lacking, judicial and prosecutorial absolute immunity remain intact." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc) (citing *Bradley* and *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)) (emphasis added); *see also Barnes v. Winchell*, 105 F.3d 1111, 1112 (6th Cir. 1997).  Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity.  *See Stump*, 435 U.S. at 359-60.

In Ohio, Courts of Common Pleas have broad general jurisdiction over almost all types of civil cases and, further, have certain inherent powers related to the exercise of such jurisdiction.  *See* OHIO REV. CODE § 2305.01; *Greenstein v. Clifford*, 64 N.E.2d 62 (Ohio 1945); *Hale v. State*, 45 N.E. 199, 200 (Ohio 1896).  The civil action that Judge Mascio regarded as still pending before him, the *Clancey's Bar* case, undoubtedly fell within the subject-matter jurisdiction of the Jefferson County Court of Common Pleas, as prosecutor Stern well knew when he invoked the jurisdiction of that court in

to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 226-27 (1988).

Because "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," *id.* at 227, judicial immunity has its limits, in the form of two exceptions. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted). The district court determined that Judge Mascio's contempt findings and sentences, ostensibly undertaken in the course of adjudicating the *Clancey's Bar* case, were judicial in nature. *Cf. Mireles*, 502 U.S. at 12 (a judge's order to apprehend an attorney and bring him before a court is a judicial act); *King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985) (holding a contempt hearing and issuing a contempt sentence are judicial activities). Plaintiffs have not appealed this aspect of the court's holding. Instead, they contest the district court's ruling that, although Judge Mascio's conduct exceeded his authority, it was not undertaken in the "complete absence of all jurisdiction."

While the second recognized exception to judicial immunity allows suits when a judge acted "in the complete absence of all jurisdiction," simply exceeding the limits of one's jurisdiction will not eliminate immunity, because many courts are courts of limited jurisdiction regularly called upon to resolve unsettled points of law relating to the contours of their own jurisdiction. *See Bradley*, 80 U.S. at 352. The Supreme Court commented,

A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority,

of contempt of Court. The Court therefore finds both Contemnors in contempt of Court.

The Court sentences Christopher D. Becker on the first finding of contempt to pay a fine of $250.00 and on the second finding of contempt to pay a fine of $500.00, both of which are to be paid within thirty (30) days.

With respect to Prosecuting Attorney Stephen M. Stern, the Court finding him in contempt sentences him to a term of imprisonment in the Jefferson County Jail of ten (10) days and a fine of $250.00 for the first offense and on the second finding of contempt a term of imprisonment in the Jefferson County Jail of twenty (20) days plus a fine of $500.00 with said sentences to run consecutively.

Sentences to be put into execution immediately and the Sheriff is to cause the Defendant to be conveyed to the Jefferson County Jail forthwith.

The Sheriff having advised the Court in a disrespectful manner by arguing and yelling with the Court that he would not put the Contemnors in the Jefferson County Jail as well as not giving assurances that the Order would be carried out is found in contempt of Court and fined $250.00 for said contempt. The Sheriff is further ORDERED to have the Defendant incarcerated in some jail by 12:00 noon of this date or this will be considered a contempt of Court.

Contemnor Stern's Motion for Stay of Execution and Bond is overruled.

Stern and Becker filed an emergency appeal, and the Seventh District Court of Appeals granted a stay of execution, in a case styled *In re: Contempt of the Jefferson County Prosecuting Attorney and Chief Assistant Prosecuting Attorney*.

On February 23, 1998, Stern filed an original action in the Ohio Supreme Court seeking a writ of prohibition. Stern argued that Mascio had been divested of all jurisdiction to proceed in *Clancey's Bar* on February 12, by means of both Judge Mascio's Disclosure of Disqualification and Stern's

filing of an Affidavit of Disqualification. He sought a writ of prohibition to bar Judge Mascio from proceeding further in *Clancey's Bar*, particularly to prevent further contempt findings and sentences.

Without affording Mascio time to file a response, the Ohio Supreme Court filed an opinion in *State ex rel. Stern v. Mascio, Judge*, and granted the writ. The court stated:

> Absent a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging the court's jurisdiction possesses an adequate remedy by appeal. Where an inferior court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction and to correct the results of previous jurisdictionally unauthorized actions.

*Stern v. Mascio*, 691 N.E.2d at 255. The court agreed with Stern that Mascio "patently and unambiguously lack[ed] jurisdiction" to act in *Clancey's Bar*, for the reasons submitted by Stern. *Ibid.* The court "issue[d] a writ of prohibition ruling that all of Judge Mascio's orders in the civil case following February 12 are void and preventing Judge Mascio from proceeding in the civil case until the Chief Justice has ruled on the affidavit of disqualification . . . ." *Ibid.*

After meeting with Chief Justice Moyer in late March, Stern withdrew his filings relating to Mascio, Mascio rescinded the contempt finding and agreed to recuse himself from the *Clancey's Bar* case. In a public statement released by Chief Justice Moyer, both Stern and Mascio agreed that such result "resolve[d] the current issues involving the two offices." They expressed satisfaction with the resolution of the matter and "regret that the matter escalated into a public dispute." Mascio and Stern "agree[d] that no other public statements on the matter will be issued."

On February 16, 1999, Stern and Becker, *pro se* and as counsel for each other, filed suit in state court against Judge Mascio, in both his individual and official capacities, claiming violations of their rights under the Fourth and Fourteenth Amendments to the United States Constitution (pursuant to 42 U.S.C. § 1983), Section 14 of Article I of the Ohio Constitution, the Ohio Revised Code, and Ohio common law. Mascio removed the case to the Southern District of Ohio pursuant to 28 U.S.C. §§ 1441(b), 1446. Although plaintiffs attempted to commence discovery, they also filed for summary judgment, as did Mascio. The district court granted Mascio's motion, concluding that absolute judicial immunity bars the instant suit because Mascio acted in a judicial capacity and did not clearly lack all subject-matter jurisdiction, even though he did act in excess of his authority. Plaintiffs timely appealed.

## II

"[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S (13 Wall.) 335, 351 (1872). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights.[2] *See Pierson v. Ray*, 386 U.S. 547, 554-55 (1967). The Supreme Court explained: "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. . . . Most judicial mistakes or wrongs are open

---

[2] Ohio's doctrine of judicial immunity from state-law tort actions for money damages parallels the federal doctrine applicable to § 1983 suits. *See Wilson v. Neu*, 465 N.E.2d 854, 865 (Ohio 1984). Accordingly, our discussion of federal law applies with equal force to plaintiffs' state-law claims.